[Crim. No. 12153.   Second Dist., Div. Five.   Apr. 25, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. FLOYD NEAL EGAN, Defendant and Appellant.

Gilbert F. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

STEPHENS, J. — Defendant was charged with and convicted of a violation of Penal Code section 12021 (possession of a concealed weapon by a convicted felon), and was sentenced to the state prison for the term prescribed by law. He appeals from the final judgment.

The sole issue is the legality or illegality of the search of defendant's personal property, a small kit bag. This search produced the gun which was the basis of the charge. The objection to the admission into evidence of the product of the search was duly made and overruled.

On September 24, 1965, defendant Egan resided with his mother and stepfather, Mr. and Mrs. Waddingham. Egan occupied one room of a condominium apartment which the Waddinghams were in the process of purchasing. No rent or other remuneration was paid by Egan for his occupancy.

During the evening of the 24th, Egan received a phone call from one Brady. Thereupon Egan requested and obtained the use of a vehicle which was owned and registered to Waddingham. Egan drove to Brady's hotel room, where he met Brady and one Carol, who was unconscious. Carol was in need of hospitalization, hence Egan and Brady determined to take her there in the Waddingham car. In transit, Egan stopped at the Waddingham apartment and left his kit bag in his room. Carol was deposited at the hospital by Egan and Brady. She was beyond hospital help and died during the night.

Informed of Carol's demise and the probability that an overdose of narcotics had precipitated the event, the police commenced to investigate the possibility of murder and of illegal possession of narcotics. The vehicle in which Carol had been transported to the hospital was traced to Waddingham. On the evening of the 26th, the officers went to his condo-

minium. Upon identifying themselves and explaining the nature of their investigation, the officers were invited into the apartment. Both of the Waddinghams were present, but Egan was not.

The officers asked Waddingham about his vehicle and learned that on the night of the 24th he had loaned it to Egan; that Egan had received a phone call and had asked to borrow the car. Mr. Waddingham further told the officers that his stepson was currently on parole for a violation committed in Washington, and had previously been arrested for both burglary and narcotics. Waddingham further related that Egan had been in and out of the house on the evening in question several times, and on the last of these visits, had deposited a small kit bag in his room. Waddingham did not know of the present whereabouts of Egan or when he would be home.

Waddingham was asked if he knew of any possible narcotics in the room. He replied, ''No.'' He stated that he had not made a search, but added: ''If you would like, you can look at the bag which he possessed, and you may also search his room.'' The officers declined at this time, and questioned Waddingham further as to circumstances under which the bag had been deposited in the room. Waddingham repeated his invitation to search the room which Egan occupied and to view Egan's bag. They accepted this offer and were escorted to the room. Waddingham opened the closet and pointed to the bag, stating that it was the bag which Egan had brought in that evening. The officers asked Waddingham if the bag belonged to him. He replied, ''No.'' The officers did not specifically ask Waddingham if they could examine inside the bag.

One of the officers then unzipped the bag and found a .30 caliber Luger pistol. Waddingham stated he had never seen the pistol before. The officers removed the pistol, replacing the bag as they had found it, absent the pistol then in police custody. The officers left the apartment. The next morning, they were informed that Egan had returned to the Waddingham apartment, and the officers went there and placed him under arrest. A further search of the room at that time disclosed contraband, with which we are not here concerned.

Was the search, resulting in the find of the Luger, illegal? We must conclude that it was.

The prosecution urges the legality of the search on two

theories: (1) that the Luger was the result of a search with consent; and (2) that the search was one based on probable cause.

The search of the bag cannot be justified on the theory of consent. True, the consent to search the apartment was within the authority of Waddingham. He and his wife were the owners, and Egan was a permissive user of a portion thereof. The right to legally authorize a search need not be exclusive; there may be joint right of possession. (*Tompkins* v. *Superior Court,* 59 Cal.2d 65, 69 [27 Cal.Rptr. 889, 378 P.2d 113]; *Marshall* v. *United States* (9th Cir. 1965) 352 F.2d 1013.) The consent to search the apartment thus eliminated the need for either a search warrant or probable cause. (*People* v. *Gorg,* 45 Cal.2d 776, 782 [291 P.2d 469]; *People* v. *Bost,* 218 Cal.App.2d 394, 398-399 [33 Cal.Rptr. 10].) The consent to search given by Waddingham reasonably included a search of any depository owned and controlled by him as part of the household furniture and furnishings. Any contraband observed during such authorized search could lawfully be seized. (*People* v. *Roberts,* 47 Cal.2d 374, 378-379 [303 P.2d 721].)

The consent to search, being in lieu of a warrant or probable cause, extended only to the premises and their contents over which Waddingham had some possessory right or control. (*People* v. *Cruz,* 61 Cal.2d 861, 866-867 [40 Cal.Rptr. 841, 395 P.2d 889]; *State* v. *Kinderman* 271 Minn. 405, —— [136 N.W.2d 577, 581].) Waddingham claimed no right, title or interest in the kit bag. He made it abundantly clear that it was not his, and that Egan had left it there. The officers were under no misapprehension as to the limit of Waddingham's authority to consent. They could search to the limit of authority reasonably believed to be in the stepfather, but not a step farther. (*People* v. *Gorg, supra,* 45 Cal.2d 776, 781.) The permissible search ended at the observation of an innocuous kit bag, neither apparent contraband (*People* v. *Roberts,* 47 Cal.2d 374, 378-379 [303 P.2d 721]) nor an abandoned article (*Rees* v. *Peyton* (4th Cir. 1965) 341 F.2d 859). The contents of the kit bag were to remain inviolate until proper authorization to inspect the contents was obtained. Egan had the sole power to consent. (*People* v. *Murillo,* 241 Cal.App.2d 173 [50 Cal.Rptr. 290]; *People* v. *Cruz, supra,* 61 Cal.2d 861 at pp. 866-867; *State* v. *Evans,* 45 Hawaii 622 [372 P.2d 365]; *Holzhey* v. *United States* (5th Cir. 1955) 223 F.2d 823; *United States* v. *Blok* (D.C. Cir. 1951) 188 F.2d 1019 [88 App.D.C. 326].)

The theory of justification of search by consent having failed, we consider the prosecution's second theory. ■ Can the search be justified on the theory of probable cause? We conclude that it cannot. Search founded upon probable cause must be incident to a lawful arrest. (*People* v. *Brown,* 45 Cal.2d 640, 643 [290 P.2d 528]; *United States* v. *Rabinowitz,* 339 U.S. 56, 60 [94 L.Ed. 653, 657, 70 S.Ct. 430].)

There was a likely homicide involved in the overdose of Carol. The vehicle used for delivery of Carol to the hospital was identified and the driver known to be Egan. Egan was on parole and had previously been involved with narcotics. The web of facts made Egan a most likely suspect of (1) homicide or (2) illegal traffic in narcotics. The officers had probable cause to arrest Egan, but Egan had not made his appearance. With the stage thus set, the officers sprung the trap with the suspect far away.

Search incident to lawful arrest, as noted, is proper, and arrest is lawful "Whenever he [a peace officer] has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed." (Pen. Code, § 836, subd. 3.) The search incident to arrest must either promptly follow or be "substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest." (*Stoner* v. *California,* 376 U.S. 483, 486 [11 L.Ed.2d 856, 859, 84 S.Ct. 889], citing *Agnello* v. *United States,* 269 U.S. 20 [70 L.Ed. 145, 46 S.Ct. 4, 51 A.L.R. 409].) The search of Egan's kit preceded his arrest by several hours. His whereabouts were unknown until his return some time later that night or the following day. The searchers had desisted from further investigation and had left the apartment to await the call to return and seize the accused. The officers returned and arrested Egan.

The officers knew, or believed they knew, the perpetrator of the (1) homicide or (2) narcotics trafficking. They knew where he was likely to return. They knew he had a kit bag which might supply evidence of his involvement with either homicide or narcotics, or both. They made no move to obtain a warrant of arrest or of search, although time permitted it. They chose to search first and arrest later, and this does not "survive the constitutional inhibition." (*Stoner* v. *California, supra,* 376 U.S. 483.)

The judgment is reversed.

Kaus, P. J., and Hufstedler, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 21, 1967. McComb, J., and Mosk, J., were of the opinion that the petition should be granted.