127 N.J. Super. 350 (1974)
317 A.2d 403
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EDDIE RUIZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 7, 1974.
Decided March 26, 1974.
*352 Before Judges LEONARD, ALLCORN and CRAHAY.
*353 Mr. Stanley C. Van Ness, Public Defender, attorney for appellant (Mr. David R. Arrajj, Assistant Deputy Public Defender, of counsel and on the brief).
Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney for respondent (Mr. Robert J. Genatt, Deputy Attorney General, of counsel; Steven Leonard Strelitz, Deputy Attorney General, on the brief).
PER CURIAM.
In three indictments defendant was charged with a variety of drug offenses allegedly committed on separate dates. Following his convictions multiple sentences were imposed aggregating a term of not less than five nor more than seven years in New Jersey State Prison. His appeals therefrom are addressed to the convictions in part and the sentences in their totality and, on his motion, we have consolidated them. They will be treated separately since different arguments are addressed to each.
1. Indictment 722-71-M in its first count charged that on April 6, 1972 defendant possessed heroin, contrary to N.J.S.A. 24:21-20. The second count charged that on the same day defendant possessed heroin with intent to distribute it, contrary to N.J.S.A. 24:21-19, subd. a(1). Following a nonjury trial, defendant was found guilty of both offenses and sentenced on each count to concurrent three to five year terms in New Jersey State Prison. Defendant's motion urging essentially that both counts involved a single offense was denied, the trial court being of the opinion that the Legislature intended that the offenses were distinct and separately punishable.
The sole point of appeal addressed to the convictions under this indictment is that the court erred by imposing separate sentences. In a word, defendant argues that the charges here merged and we agree.
The record reflects that the proofs were sufficient to support the conviction of possession of heroin with intent to distribute it. While possession of heroin is a crime in and of itself, in the prosecution of this indictment, it was an essential *354 element of the charge of possession with intent to distribute and must therefore be treated as an included offense. Defendant may not stand convicted of both charges. State v. Thomas, 118 N.J. Super. 377 (App. Div. 1972), certif. den. 60 N.J. 513 (1972); State v. Hill, 44 N.J. Super. 110 (App. Div. 1957). Accordingly, the conviction on the first count of Indictment No. 722-71-M and the sentence imposed thereon are hereby vacated. The judgment of conviction on the second count is affirmed.
2. Indictment No. 729-71-M charged in the first count that on June 13, 1972 defendant possessed heroin with intent to distribute it contrary to N.J.S.A. 24:21-19, subd. a(1) and in the second count that on the same day he distributed heroin contrary to N.J.S.A. 24:21-19, subd. a(1).
This indictment was tried to a jury which found defendant guilty of both counts. He was sentenced therefor on the first count to not less than three nor more than five years in New Jersey State Prison and on the second count to not less than five nor more than seven years. It was ordered that the terms were to be served concurrently with each other and also with the sentences imposed on Indictment No. 722-71-M.
Originally, the only point of appeal directed to this indictment was that the trial court erred in not granting defendant's motion for a mistrial generated by allegedly improper comments by the prosecutor during his summation. Thereafter by reply brief (the point was not raised below) defendant argues that his possession conviction merged into the conviction for distribution and should be vacated.
On summation the prosecutor alluding to the heroin which had been marked into evidence, invited the jury's attention to the destructive character of the drug  "* * * cute little package * * * incredible how much destruction in that little package." A defense objection was interposed and the statement was withdrawn. Thereafter, reference was again made to the "little package"  "this little baby" and *355 its potential. At the conclusion of the State's summation, defense counsel moved for a mistrial. The motion was denied, and we think properly. The allowance of mistrials resides in the discretion of trial courts and should be granted only where manifest injustice looms. State v. DiRienzo, 53 N.J. 360, 383 (1969). Our review of the challenged remarks satisfies us that while they were better left unsaid (again we have an instance of a prosecutor's zeal overriding his responsibility, State v. Farrell, 61 N.J. 99, 104 (1972)), but we do not find that in context they were of a quality which constituted meaningful prejudice to defendant. The trial judge in his final instructions to the jury was meticulous and vigorous in charging them to disregard the allegedly offensive comments. He stated 
Now, there were certain statements made in the closing statement by the Prosecutor with respect to the potential or the effects of heroin. I am instructing you to disregard them completely. That was not part of the evidence in this case. It is not something for you to consider at all. You are concerned only with the two charges that are brought against the defendant and not of the potential effects or the effects that heroin has, and I very strongly tell you to completely disregard any of those statements which dealt with the potential or the effects of heroin.
We are satisfied that the cited instruction effectively eradicated whatever prejudicial impact the prosecutor's remarks may have generated. State v. Knight, 63 N.J. 187 (1973). Whatever prejudice may have resulted from the remarks themselves or which may have remained after the court's instruction was not in our view of a quality to warrant reversal. Here, there was ample proof of defendant's guilt. State v. LaPorte, 62 N.J. 312 (1973).
We need not consider whether defendant's argument on the merger of offenses is timely since we are satisfied that on the record here the possession of heroin charge was separate and distinct from the distribution charge and, as such, separately punishable.
*356 The record reflects that on the night of the offense, one Botsko  a police officer  was engaged in an undercover narcotics mission. Accompanied by an informer and attired in a manner appropriate to the milieu he was entering, he was approached by defendant on a public street. Defendant claimed that he had the "best dope" and that he and another had "just copped an ounce from New York." Others on the scene noticed that Botsko was carrying an automatic weapon in his pants. Botsko was apprehensive that the weapon might be a giveaway that he was a police officer. To avoid compromising his cover he removed the weapon and inquired as to how much dope might be procured for it. Botsko testified that defendant stated he would give four "bags" in exchange for the weapon. Botsko countered that he would want seven or eight bags and went on to inquire of defendant as to the cost of a single bag. Defendant stated the price to be ten dollars. Botsko gave defendant ten dollars whereupon defendant left the scene, returning in about one minute and handed him one bag containing a substance later proven to be heroin. After further unfruitful bartering for drugs in exchange for the weapon the engagement broke off. Botsko positively identified defendant in court as the person who sold the narcotics to him.
Defendant's belated assertion that the crime of possession of the bag of heroin with intent to distribute it merged into his conviction for distribution of the drug employs for its support two cases, recently decided by this Division, but unreported. We do not now regard that those decisions control and are satisfied that the Legislature intended that the act of possession with intent to distribute narcotics and the act of distributing them to be distinct offenses and separately punishable. Each activity is a separate evil which the Legislature determined to combat.
Rejecting a similar argument in State v. Booker, 86 N.J. Super. 175 (App. Div. 1965) we held:
*357 If defendant's control had been `fleeting and shadowy in its nature' there might be merit in this argument. However, we are not called upon to express an opinion on this point in this case because the evidence shows that defendant's contact with and control over the narcotics was not a mere fleeting and shadowy incident of the sale. In each of the three episodes, he had the narcotics on his person when he offered them for sale. In short, the possession antedated and was separate and distinct from the sale, and was a separate crime. * * * [at 178; emphasis added]
On the record here Booker, supra., to which we subscribe, is operative.
In Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958) defendant, as the result of engaging in the single sale of narcotics, was convicted of violating three federal enactments.[1] He was sentenced therefor to three consecutive custodial terms. It was held that the multiple punishment imposed was not offensive to the constitutional prohibition against double jeopardy.
Justice Frankfurter, for the majority, said:
* * * The fact that an offender violates by a single transaction several regulatory controls devised by Congress as means for dealing with a social evil as deleterious as it is difficult to combat does not make the several different regulatory controls single and identic. * * *
* * * Of course the various enactments by Congress extending over nearly half a century constitute a network of provisions, steadily tightened and enlarged, for grappling with a powerful, subtle and elusive enemy. If the legislation reveals anything, it reveals the determination of Congress to turn the screw of the criminal machinery  detection, prosecution and punishment  tighter and tighter. The three penal laws for which petitioner was convicted have different origins both in time and in design. * * *
Possession of controlled dangerous substances is a vice unto itself and legislatively proscribed. The crime is complete *358 and the guilt of it established when it is proven that a person knowingly and intentionally possessed a controlled dangerous substance be it for his own use or distribution to others. A subsequent distribution encompasses an added element and brings into being a new and separate offense.
Analyzing earlier legislation, albeit in a different factual context, Justice Proctor in State v. Reed, 34 N.J. 554 (1961) succinctly addresses the issue of possession and provides the legislative rationale:
* * * Why then was the unqualified term "possess" used? Undoubtedly, to facilitate enforcement. It is well known that it is extremely difficult to apprehend and convict drug traffickers. Illegal transfers do not take place under the eyes of the police. They are clandestine operations carefully guarded from official scrutiny. The proscription of possession, without more, facilitates the enforcement of the law against traffickers by eliminating the burden of proving a transfer. If possession is interpreted not to include possession for imminent personal use, the purpose of facilitating enforcement against traffickers would be seriously hindered. * * * (at p. 565)
We find nothing in our current New Jersey Controlled Dangerous Substances Act, N.J.S.A. 24:21-1 et seq. (effective 1971) which either expressly or impliedly evinces a legislative intendment to modify or otherwise dilute the viability of the concept of Reed and Booker.[2] See State v. Siebert, 126 N.J. Super. 534 (App. Div. 1974), decided February 8, 1974.
*359 3. In Indictment 735-71-M defendant was charged, in the third count, with aiding and abetting another to distribute heroin on June 27, 1972, contrary to N.J.S.A. 24:21-19, subd. a (1) and 2A:85-14. The fourth count alleged that defendant and another conspired to distribute heroin, contrary to N.J.S.A. 2A:98-1 and 2 and N.J.S.A. 24:21-24.
On September 18, 1972, pursuant to a bargained plea, defendant pled guilty to the third count. The prosecutor then reported to the court that at the time of sentence he would move to dismiss the fourth count. On October 13, 1972 defendant appeared before the court for sentencing on the convictions as entered in the three indictments here under review. No motion for dismissal was made as to the fourth count of Indictment 735-71-M and the trial court sentenced him on the third and fourth counts of it to not less than three nor more than five years in New Jersey State Prison, to be served concurrently with each other and the sentences imposed on the other indictments. Defendant did not move to correct the sentence or to enforce the bargained plea. On this appeal defendant urges that the sentence imposed on the fourth count was the product of inadvertence. The State agrees. Accordingly, we exercise our original jurisdiction R. 2:10-5, and vacate defendant's conviction and consequent sentence on the fourth count of Indictment 735-71-M.
Lastly, defendant asserts that the sentences imposed were manifestly excessive. In view of the nature of the offenses and defendant's participation in them, we are satisfied that, as modified, rather than being excessive the custodial terms were eminently appropriate and did not constitute an abuse of the trial court's sentencing discretion. State v. Yormark, 117 N.J. Super. 315 (App. Div. 1971), certif. den. 60 N.J. 138 (1972).
*360 The judgments under review, as modified, are affirmed.
ALLCORN, J.A.D. (dissenting, in part).
By the two counts set forth in Indictment 729-71M defendant was charged with unlawful distribution (sale) of heroin and with unlawful possession of heroin with intent to distribute. The proofs disclosed the sale by the defendant of a single bag of heroin and the possession by him of the same bag of heroin.
In the factual setting here present, defendant literally could not have distributed this single bag of heroin without having had possession of it with the intention of selling it. The evidence introduced by the State indicated that, after defendant and the undercover police officer had struck their bargain and the latter had paid defendant for the one bag of heroin, defendant (as the majority notes) "left the scene, returning in about one minute and handed him [the officer] one bag" of heroin. There was no evidence that the defendant had any drugs in his possession on that occasion other than the bag of heroin that was the subject of the sale.
Quite plainly, under such circumstances possession of the bag of heroin by defendant was necessarily incidental to and an integral part of the distribution. The possession was momentary and passing, simply for the purpose of consummating the sale and for the period of time essential to complete it  the "fleeting" possession perforce accompanying the sale, which this court in State v. Booker, 86 N.J. Super. 175, 178 (App. Div. 1965), suggested would merge with the sale as an integral and inseparable part thereof.[1] As such, defendant was subject to conviction for either the offense of distribution or the offense of possession with intent to distribute, but not both.
Fundamentally, in the resolution of this issue, we deal with the constitutional proscriptions against double jeopardy. *361 The underlying design and effect of the prohibition contained in N.J. Const. (1947), Art. I, par. 11, has been declared to be for the purpose of "justly [assuring] that the State with its great resources will not be permitted to harass and oppress the individual by multiple prosecutions or punishment for the same offense." State v. Currie, 41 N.J. 531, 536 (1964). In this context, same offense "is not limited to the same offense as an entity and designated as such by a particular name. It comprehends also any integral part of such offense which may subject the offender to prosecution and punishment." State v. Dixon, 40 N.J. 180, 185 (1963); State v. Mark, 23 N.J. 162 (1957). To prosecute and to punish this defendant for the offense of sale and for the offense of possession with intent to sell the very same bag of heroin, is a clear violation of this constitutional protection. Compare State v. Wilkinson, 126 N.J. Super. 553 (App. Div. 1973), certif. denied 63 N.J. 562 (1973); compare also, the disposition by this court in the present case of the charges of possession and possession with intent to distribute the same drugs, under Indictment 722-71M.
The current of authority elsewhere is in accord, whether the controlling principle derives immediately from constitution or statute, and whether dealing with multiple prosecution and punishment for possession and sale of the same drugs or, more commonly, with possession and transportation of the same drugs.[2]
*362 Notwithstanding the integral nature and inseparability of the two offenses, the majority of the court takes the position that "the Legislature intended that the act of possessing with intent to distribute narcotics and the act of distributing them to be distinct offenses and separately punishable." The section in question, in its entirety, provides (N.J.S.A. 24:21-19):
Prohibited acts A.  Manufacturing, distributing, or dispensing  Penalties
a. Except as authorized by this act, it shall be unlawful for any person:
(1) To manufacture, distribute, or dispense, or to possess or have under his control with intent to manufacture, distribute, or dispense, a controlled dangerous substance; or
(2) To create, distribute, or possess or have under his control with intent to distribute, a counterfeit controlled dangerous substance.
b. Any person who violates subsection a. with respect to:
(1) A substance classified in Schedules I or II which is a narcotic drug is guilty of a high misdemeanor and shall be punished by imprisonment for not more than 12 years, a fine of not more than $25,000.00 or both; or
(2) Any other controlled dangerous substance classified in Schedules I, II, III or IV is guilty of a high misdemeanor and shall be punished by imprisonment for not more than 5 years, a fine of not more than $15,000.00 or both; or
(3) A substance classified in Schedule V is guilty of a misdemeanor and shall be punished by imprisonment for not more than 1 year, a fine of not more than $5,000.00, or both.
A reading of the cited section, either alone or in the context of the whole of the Controlled Dangerous Substances Act, discloses no indicia of such intent, and the opinion of the court makes reference to none of significance. Absent a clear and unambiguous indication that a legislative body intended to authorize multiple punishment in such a situation, the enactment will be construed against expanding a single integral transaction into multiple offenses. Bell v. United *363 States, 349 U.S. 81, 83-84, 75 S.Ct. 620, 99 L.Ed. 905 (1955). In any event, were the cited section to be interpreted as authorizing multiple conviction and punishment in the circumstances here present, it would run counter to the constitutional provisions barring double jeopardy.
Reliance is placed also on Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), and State v. Reed, 34 N.J. 554 (1961). Gore is inapposite, since the three offenses there charged were not necessarily incident to or integral parts of the sales transaction. Here, in contrast, it was literally impossible to consummate the sale without possession of the drug. Moreover, in determining the breadth of protection afforded by the provisions of the double jeopardy clause of the New Jersey Constitution, we are not bound by an interpretation of the double jeopardy clause of the Federal Constitution of a more limited or restricted dimension. Cf. State v. Currie, supra.
The decision in State v. Reed, supra, has no applicability whatever. The single issue in that case was whether, in prohibiting unauthorized possession of drugs under section 4 of the Uniform Narcotic Drug Law (N.J.S.A. 24:18-4, since repealed), the Legislature intended to proscribe all unauthorized possession, including possession for imminent personal use. The question of double jeopardy was not involved, nor was it discussed.
In the construction and application of our prohibition against double jeopardy, "the emphasis should be on underlying policies rather than technisms. The primary considerations should be fairness and fulfillment of reasonable expectations in the light of the constitutional and common law goals." State v. Currie, 41 N.J. 531, 539 (1964). To subject this defendant to prosecution and punishment on the two charges, is eminently unfair and defeats reasonable expectations.
For these reasons, the conviction of defendant for possession of heroin with intent to distribute, charged in count one *364 of Indictment 729-71M, should be vacated and set aside. On all other issues, I am in accord with and join in the views expressed in the opinion of the court.
NOTES
[1] (a) § 4705(a) of the 1954 Internal Revenue Code (sale of narcotics not in pursuance of a written order).

(b) § 4704(a) of the 1954 Internal Revenue Code (sale of narcotics not in their original stamped package).
(c) § 2(c) of the Narcotics Drugs Import and Export Act (facilitation of concealment and sale of drugs).
[2] Booker involved convictions under N.J.S.A. 24:18-4 which provided: "It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense or compound any narcotic drug, except as authorized by this chapter." N.J.S.A. 24:21-19, subd. a(1), here involved, treats distribution and possession with intent to distribute controlled dangerous substances disjunctively and unlike our dissenting brother, we perceive no meaningful alteration of legislative intent. State v. Spindel, 24 N.J. 395 (1957), State v. Kress, 105 N.J. Super. 514 (Law Div. 1969).

Assuming defendant had been charged with "simple" possession under N.J.S.A. 24:21-20(a), and distribution contrary to N.J.S.A. 24:21-19(a)(1), Booker would be fully operative. We fail to see "fleeting" possession in this record. Defendant clearly had control over heroin notwithstanding it was not on his person when he made the arrangement with Botsko. His intention to sell the heroin should not give him the windfall of "merger."
[1] Unlike Booker, the defendant's possession here did not antedate the sale; he did not have the bag of herion "on his person when he offered [it] for sale." 86 N.J. Super. at 178.
[2] See e.g., State v. Price, 106 Ariz. 433, 477 P.2d 523 (Sup. Ct. 1970); People v. Roberts, 40 Cal.2d 483, 254 P.2d 501 (Sup. Ct. 1953); Yost v. State, 243 So.2d 469 (Fla. App. Ct. 1971); Thompson v. State, Ind., 290 N.E.2d 724 (Sup. Ct. 1972), cert. den. 412 U.S. 943, 93 S.Ct. 2788, 37 L.Ed.2d 403 (1973); State v. Miller, Or. App., 513 P.2d 508 (Or. App. 1973); 1 Wharton's Criminal Law and Procedure (Anderson ed. 1957), § 32 at 68.

Contra, Gee v. State, 225 Ga. 669, 171 S.E.2d 291 (Sup. Ct. 1969); State v. Cameron, 283 N.C. 191, 195 S.E.2d 481 (Sup. Ct. 1973). Both cases involved the offenses of sale and simple possession; and held that the two offenses were separable and independent, principally on the theory that because a person could legally possess the drug illegally sold, neither offense was a necessary element in or constituted an essential part of the other offense  a situation not present in our case, since possession with intent to sell in violation of the statutory prerequisites is unlawful, whether initial possession was acquired legally or illegally.