245 N.J. Super. 441 (1991)
586 A.2d 256
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
TERRY LEE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 21, 1990.
Decided January 17, 1991.
*443 Before Judges KING, LONG and STERN.
Wilfredo Caraballo, Public Defender, attorney for appellant (Kevin G. Byrnes, designated counsel on the brief).
Alvin G. Shpeen, Deputy Attorney General, Acting Salem County Prosecutor, attorney for respondent (Jonathan J. Garbini, Assistant Prosecutor, Salem County, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
Defendant Terry Lee appeals his conviction after a jury trial for possession of cocaine. Lee challenges the denial of his suppression motion, the denial of his motion for a mistrial concerning the prosecutor's comments made during summation, and his sentence. The first issue on appeal is whether the *444 codefendant-driver Raymond Williams' consent to search the vehicle and its contents was binding on Lee, a passenger in Williams' vehicle, and included containers found in the trunk. The second issue concerns whether denial of ownership of a container in the trunk permitted the police to search it. We think the judge incorrectly answered the consent issue in the State's favor. But we affirm the denial of the suppression motion on the separate and independent ground that by denying ownership of the container in which cocaine was found, Lee had relinquished any expectation of privacy in it.
This is the procedural background. In February, 1988 Lee was indicted along with his codefendant Raymond Williams for possession of a controlled dangerous substance on December 14, 1987, in this case a trace amount of cocaine in a shaving kit, in violation of N.J.S.A. 2C:35-10a(1).
In March 1988 Lee filed a motion to suppress the seized cocaine. The Law Division judge issued an opinion from the bench on March 22, 1988 denying the motion on the ground that the search was authorized by Williams' general consent to search the vehicle and its contents.
Williams later pled guilty in early April 1988 and testified for the State at Lee's trial. Williams testified at trial that both he and Lee bought crack and cocaine in New York which they later used; the residue in the vials in the shaving kit was the basis for this prosecution. Williams was later sentenced to probation for one year with credit for 115 days served in the County Jail. At Lee's trial in late April, 1988, the jury returned a verdict of guilty to the single count of the indictment. Lee was sentenced to a three-year prison term and a $1,000 drug enforcement penalty, a $50 lab fee, and a $30 VCCB fine. In addition, his driving privileges were suspended for two years.
The hearing on the motion to suppress established these facts: On December 14, 1987, at about 3 a.m. the car in which defendant Lee was travelling as a passenger was stopped on the Turnpike for speeding. Troopers Costill and Campbell of *445 the State Police approached the car and sought the driver's license and the car registration. Williams, the driver and codefendant in this case, produced a driver's license but could not produce the vehicle registration. Costill made a computer check which revealed that the plates were not in Williams' name and belonged on another car.
When Costill told Williams that the plates did not match the car, Williams became "visibly nervous, trembling." Costill then requested a consent to search the car from Williams. Costill informed Williams that he did not have to sign and that he could withdraw his consent at any time during the course of the search. Williams voluntarily gave his consent to search, orally and in writing. The consent form purported to authorize "a complete search of" the vehicle. Though the form did not also mention a search of any containers found in the car, Trooper Costill testified that he told Williams that the search was to include everything found inside the car.
The troopers searched the interior of the vehicle and found nothing. They then searched the trunk where they found two suitcases. Williams claimed ownership of one and defendant claimed ownership of the other. A search of the two suitcases revealed nothing. The troopers then found a zippered shaving kit. When Costill asked them whose kit it was, "they both said they didn't know who that belonged to." Inside the shaving kit the troopers found shaving equipment, 55 vials with residue of what Costill believed was crack, a clear plastic bag with a white powder which he believed to contain cocaine, and a pipe which he believed was used for smoking crack. The lab results revealed that the plastic bag contained baking powder and that a vial contained a trace amount of cocaine.
Lee urges that because the driver Williams disclaimed ownership of the shaving kit in which the cocaine was found, he was without authority to consent to the search of its contents. He asserts that the judge erred in denying his motion to suppress the evidence. The State urges that Williams' consent was valid *446 and encompassed the entire car and all of the contents of the car. In the alternative, even if the consent was invalid, the State contends, Lee gave up his expectation of privacy in the kit by denying that it was his.
The judge found that 1) Williams voluntarily signed the consent forms,[1] and 2) the consent included a search of the car as well as any containers found inside. Because the consent extended to all of the car's contents, the judge implied, it was of no legal consequence that both occupants disclaimed ownership of the shaving kit. Although the judge did not expressly say so, he necessarily held that Williams' general consent was also binding on Lee. The judge commented:
... And the fact that the operator of the car consented with full knowledge of his rights, made the general search of the vehicle and the contents, therein, valid. For those reasons, I find that the search of the shaving kit which revealed the contraband to be a valid search. The defendant's [Lee's] fourth amendment rights were in no way violated.
To rely on a third-party consent to search a container, the State must prove that the consent was obtained from a person with a sufficient relationship to the container. State v. Douglas, 204 N.J. Super. 265, 276, 498 A.2d 364 (App.Div. 1985), certif. den. 102 N.J. 378, 508 A.2d 242 (1985) (defendant's mother could consent to a search of his room). The State must show that the third party possessed a "common authority" over the container. Unless the State can show an implied agency or a relationship to the defendant, the State must show that the person consenting had rights of possession over the container equal or superior to the defendant's. 204 N.J. Super. at 277, *447 498 A.2d 364; State v. Miller, 159 N.J. Super. 552, 557-558, 388 A.2d 993 (App.Div. 1978), certif. den. 78 N.J. 329, 395 A.2d 198 (1978).
A third person's consent "cannot validate a warrantless search when the circumstances provide no basis for a reasonable belief that shared or exclusive authority to permit inspection exists in the third person...." United States v. Block, 590 F.2d 535, 540 (4 Cir.1978). A consent to search especially lacks validity where the third person actually disclaims any right of access. Ibid. Even where a third party has authority to consent to a search of the premises, that authority does not extend to a container in which the third party denies ownership, because the police are left with "no misapprehension as to the limit of [the third party's] authority to consent." People v. Egan, 250 Cal. App.2d 433, 58 Cal. Rptr. 627 (Cal.Ct. App. 1967). For example, in Egan, the California appellate court found that the stepfather's authority to consent to search the defendant's bedroom in the stepfather's apartment did not extend to the defendant's kit bag in the closet where the stepfather denied ownership of the bag. 250 Cal. App.2d at 436, 58 Cal. Rptr. at 630.
This principle also was illustrated in a case factually analogous to the one before us: People v. Mazzulla, 71 Mich. App. 418, 248 N.W.2d 567 (Ct.App. 1976). There a policeman stopped a vehicle driven erratically by defendant. He was charged with driving under the influence of narcotics. Later that day the police contacted the vehicle's owner, defendant's mother-in-law, and obtained her consent to search the car. When the officer found a metal box on the rear floor, the mother-in-law disclaimed ownership. The officer opened the box and found drugs, which were used as evidence against defendant.
The Michigan appellate court rejected the State's claim that the owner's consent justified the search of the box: "The consent given permitted the warrantless search of the automobile, but did not authorize the police to open the box and examine its contents." 248 N.W.2d at 568. By denying any *448 ownership in the box, the owner had no authority to consent to its search on behalf of defendant. Id. at 569. See also State v. Santana, 215 N.J. Super. 63, 69, 521 A.2d 346 (App.Div. 1987), construing an earlier case, State v. Pierce, 190 N.J. Super. 408, 417, 463 A.2d 977 (App.Div. 1983), as holding "that a search of a car consented to by one having control of the vehicle does not necessarily include a search of the private property of another contained within the car."
In the case before us, the driver and purported owner, Williams, consented to a search of the car and signed a consent form. Lee does not challenge the validity of the consent as to the car but rather contests Williams' authority to consent to the search of the shaving kit which Williams denied owning. When the troopers searched the trunk, Lee and Williams each claimed that one of the two suitcases was their own. The search of the two suitcases revealed no contraband. When the police removed the shaving kit from the trunk, both Williams and Lee denied ownership of the shaving kit. A third person's consent to a general search is not valid as to containers over which the third person disclaims ownership. There was no reasonable or reliable basis in this context for the police to believe that Williams had apparent or actual authority to consent to search the shaving kit. Illinois v. Rodriguez, 497 U.S. ___, ___, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148, 161 (1990) (reasonable reliance on "apparent authority" to consent to search living quarters sufficient). Williams' ownership of and right to operate this car were questionable indeed at this point in the investigation.
The State argues that defendant assumed the risk that the driver would consent to the search of the car when he became a passenger in the car, relying on United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). Matlock does not support this proposition. Rather, Matlock discussed the third party's authority to consent and remanded to determine whether defendant's female friend had common authority over the *449 bedroom for which she had given her consent to search. 415 U.S. at 171, 177-178, 94 S.Ct. at 996-97, 39 L.Ed.2d at 249, 253. The Court held that the third person consenting must possess common authority over the premises or container to be searched. 415 U.S. at 171, 94 S.Ct. at 993, 39 L.Ed.2d at 249. Common authority rests "on mutual use of property by persons having joint access or control." 415 U.S. at 172 n. 7, 94 S.Ct. at 993 n. 7, 39 L.Ed.2d at 250 n. 7.
The State also relies on Ledda v. State, 564 A.2d 1125 (Del. 1989), for the proposition that a driver can consent to a search of an automobile and its contents. However, the State ignores the requirement that the driver must have joint access and control. In Ledda, the owner of the car was the defendant challenging the search; he was present when the driver consented and did not "countermand the consent." Id. at 1128. As the Ledda court pointed out, the federal cases in this area require that the third party have authority to consent and that such authority encompasses both authority and control. In the case before us there is no showing that Williams, the driver, had authority in this sense to consent to a search of the shaving kit. Rather, Williams renounced ownership and presumably could not consent to the search. We reject the Law Division judge's ground for decision: that Williams' consent to search the car included consent to search the shaving kit that both he and Lee disowned and this consent was binding on Lee. We are certainly not prepared, and surely not on this record, to hold that a driver, without proper registration and plates but who claims to own the vehicle, can consent to a search of any container in the vehicle, even though he denies owning the container.
Nonetheless, we conclude that the denial of the suppression motion must be affirmed on the alternative theory offered by the State, namely, that even if there was no consent, Lee relinquished any expectation of privacy he might have had in the kit when he disclaimed ownership or any interest in it. The *450 judge alluded to this ground as a possible dispositive theory, but he deemed it unnecessary to rely upon it in view of his conclusion that Williams' consent was binding on Lee. He said:
... Both occupants disclaimed ownership of the shaving kit. I might say that their disclaimer of the ownership of the shaving kit could very well make the search a valid search since one cannot expect to have any expectation of privacy in a container in which he doesn't have ownership, even if they didn't consent. And I find that there was such a consent.
There may be a serious issue here as to whether or not he had a right to open the shaving kit since they both disclaimed ownership. In any event, the consent was there.
Even though the search of the shaving kit was not consensual, we conclude that the search was otherwise reasonable. In determining reasonableness, the issue, to a large extent, is whether a defendant had a reasonable expectation of privacy in the item searched; indeed, if there is no such expectation, there is no "search" ascribable to a defendant's possession within the meaning of the Fourth Amendment. United States v. Miller, 589 F.2d 1117, 1134 (1st Cir.1978), cert. den. 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1979). The test is whether by his conduct defendant objectively relinquished his expectation of privacy in the object searched. State v. Hempele, 120 N.J. 182, 209, 212-215, 576 A.2d 793 (1990); 1 LaFave, Search and Seizure (2 ed. 1987), § 2.6(b) at 467. Renouncing one's interest in the item seized does not necessarily constitute relinquishing one's privacy expectation; the circumstances may be such as to show that defendant retained his privacy rights despite his disclaimer of possessory interest. State v. Hempele, 120 N.J. at 213, 576 A.2d 793. For example, our Supreme Court recently held that even though one "abandons" property placed on the curb for garbage pickup, that person does not forfeit an expectation that his garbage will not be searched prior to pickup. Id. at 214-215, 576 A.2d 793. Cf. State v. Burgos, 185 N.J. Super. 424, 449 A.2d 536 (App.Div. 1982) (defendant abandoned tin of drugs he hid under parked car), cited in 1 LaFave, § 2.6(b) at 465 n. 36.
*451 The circumstances of this case compel our conclusion that defendant relinquished his expectation of privacy when he affirmatively told the officer that he did not know to whom the kit belonged and when he failed to protest during the officer's search of it, i.e., "[T]hey both said they didn't know who that belonged to." As long as the stop and search, as here, was not the product of illegal, harassing, coercive or deceitful conduct by the police, and as long as defendant, as here, stood by without complaint as the search proceeded, he gave up any expectation of privacy. 1 LaFave at 471-475. In such circumstances, the search is not one against which defendant is entitled to constitutional protection. 1 LaFave at 463-464.[2]
The concept that no "search" in the constitutional sense occurred in this case finds support in factually analogous cases elsewhere. In U.S. v. McBean, 861 F.2d 1570 (11th Cir.1988), defendant was stopped for driving erratically. He consented in writing to a search of his car. When the police found certain luggage in the trunk, defendant denied ownership and knowledge of its contents. A search revealed marijuana. The Court of Appeals reversed the district court's grant of defendant's suppression motion, reasoning that by affirmatively disavowing the luggage, the defendant had no legitimate protectible expectation of privacy in it. Id. at 1574.
In U.S. v. Brady, 842 F.2d 1313 (D.C. Cir.1988), defendant was a train passenger who consented to a Drug Enforcement Administration (DEA) search of his sleeping compartment. When the DEA agent found a gym bag during the search, defendant denied all knowledge of it. The agent found cocaine in the bag. The Court of Appeals upheld the denial of defendant's motion to suppress on the ground that defendant had consented to the search. In dictum, Chief Judge Wald of the *452 D.C. Circuit Court specifically disapproved of the district court judge's finding that defendant had not abandoned his privacy expectation in the gym bag:
... There was no qualification when he disavowed knowledge of the bag; similarly, he remained silent while the agents displayed the bag to other occupants of the car. Case law on abandonment confirms that Brady's spontaneous denial of ownership, unaffected by police provocation, demonstrates sufficient intent of disassociation to prove abandonment. [Id. at 1316]
See also United States v. Miller, supra, 589 F.2d at 1131 where Judge Coffin of the First Circuit stated agreement with the Fifth and Ninth Circuits that: "one who disclaims any interest in luggage thereby disclaims any concern about whether or not the contents of the luggage remain private." In State v. Mahone, 67 Haw. 644, 701 P.2d 171 (1985), cited at 1 LaFave, supra, § 2.6(c) at 475 n. 73, defendant was an overnight guest in a woman's apartment. The woman consented to a search of the apartment. The Hawaii Supreme Court held that the defendant could not complain about the search of his canvas bag in the apartment where he had disclaimed ownership of it and had watched without protest the search-by-consent extend to the bag. The Court concluded that "a verbal disclaimer of ownership of the thing being searched constitutes an abandonment of the Fourth Amendment protection." 67 Haw. at 649, 701 P.2d at 175.
The motion to suppress the evidence found in the shaving kit was properly denied. The fact that the literally "disowned" container later is circumstantially linked to the defendant in an incriminating fashion does not revive any previously renounced right of privacy. See State v. Farinich, 179 N.J. Super. 1, 430 A.2d 233 (App.Div. 1981), aff'd 89 N.J. 378, 446 A.2d 120 (1982). We conclude that defendant has no constitutional expectation of privacy in a shaving kit he expressly denied owning to the police while he was a passenger in a car he did not own.
We conclude that the remaining two issues on this appeal are clearly without merit: (1) the trial judge properly denied Lee's *453 motion for a mistrial for improper comments by prosecutor, and (2) the sentence was not excessive. Any potential for error from the prosecutor's remarks was remedied by the judge's excellent curative instruction. State v. Ruiz, 127 N.J. Super. 350, 355, 317 A.2d 403 (App.Div. 1974), aff'd 68 N.J. 54, 342 A.2d 833 (1975). Defendant's prior record well justified the custodial sentence.
Affirmed.
NOTES
[1] The consent form signed by Williams stated:

I further authorize the above member of the New Jersey State Police to remove any letters, documents, papers, materials, or other property which is considered pertinent to the investigation, provided that I am subsequently given a receipt for anything which is removed. I have knowingly and voluntarily given my consent to search without fear, threat, or promise (expressed or implied). In addition I have been advised by Tpr Costill 3766 that I have the right to refuse giving my consent to search.
[2] Nothing in our decision should be construed to diminish standing to raise search and seizure issues even though a defendant does not admit or denies actual ownership or a possessory interest in the contraband or its container. See State v. Alston, 88 N.J. 211, 227, 440 A.2d 1311 (1981).