NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0737-15T4

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

BRYAN J. BLACK, a/k/a
RICARDO ROOTER,

 Defendant-Appellant.

________________________________________________________________

 Argued May 2, 2017 – Decided August 10, 2017

 Before Judges Koblitz and Rothstadt.

 On appeal from Superior Court of New Jersey,
 Law Division, Union County, Indictment No. 14-
 04-0311.

 Stephen P. Hunter, Assistant Deputy Public
 Defender, argued the cause for appellant
 (Joseph E. Krakora, Public Defender, attorney;
 Mr. Hunter, of counsel and on the brief).

 Kimberly L. Donnelly, Special Deputy Attorney
 General/Acting Assistant Prosecutor, argued
 the cause for respondent (Grace H. Park,
 Acting Union County Prosecutor, attorney;
 Bryan S. Tiscia, Special Deputy Attorney
 General/Acting Assistant Prosecutor, of
 counsel and on the brief).

PER CURIAM
 After the trial court denied his motion to suppress evidence

found during his arrest and when the police later searched his

girlfriend's apartment, defendant Bryan J. Black pled guilty to

third-degree possession of a controlled dangerous substance (CDS)

with intent to distribute in a school zone, N.J.S.A. 2C:35-7. The

court sentenced defendant in accordance with his plea agreement

to five years imprisonment with a thirty-month period of parole

ineligibility.

 On appeal, defendant challenges the denial of his suppression

motion and the imposition of the thirty-month parole ineligibility

period. Specifically, he argues:

 POINT I

 THE DRUGS AND OTHER ITEMS FOUND IN THE
 APARTMENT SHOULD HAVE BEEN SUPPRESSED BECAUSE
 THE CONSENT OF DEFENDANT'S GIRLFRIEND TO
 SEARCH THE APARTMENT COULD NOT REASONABLY
 EXTEND TO CONTAINERS THAT DID NOT BELONG TO
 HER. STATE V. SUAZO, 133 N.J. 315, 320 (1993).
 U.S. CONST. AMEND. IV, XIV; N.J. CONST. ART.
 I, ¶¶ 1, 7.

 POINT II

 THE DRUGS SEIZED FOLLOWING THE ARREST SHOULD
 HAVE BEEN SUPPRESSED BECAUSE THE STATE FAILED
 TO ESTABLISH A SIGNIFICANT ATTENUATION BETWEEN
 THE UNCONSTITUTIONAL STOP OF DEFENDANT AND THE
 SEIZURE OF THE DRUGS HE DISCARDED FOLLOWING
 THAT STOP. STATE V. WILLIAMS, 410 N.J. Super.
 549 (APP. DIV. 2009). U.S. CONST. AMEND. IV,
 XIV; N.J. CONST. ART. I, ¶¶ 1, 7.

 2 A-0737-15T4
 POINT III

 BECAUSE DEFENDANT WAS INCORRECTLY INFORMED
 THAT THE THIRTY-MONTH PAROLE INELIGIBILITY
 TERM WAS MANDATORY, THIS MATTER SHOULD BE
 REMANDED FOR A RESENTENCING PURSUANT TO STATE
 V. KOVACK, 91 N.J. 476, 485 (1982).

 We have considered defendant's arguments in light of our

review of the record and the applicable legal principles. We

reverse, affirming the denial of his suppression motion as to the

CDS seized at the scene of his arrest, but reversing as to the CDS

and other items discovered in his girlfriend's apartment.

 After a grand jury indicted defendant,1 he filed a motion to

suppress, arguing that the police did not have reasonable and

articulable grounds to conduct an investigatory stop of defendant,

challenging the admission of the CDS he discarded when he attempted

to flee, and contending that he had a reasonable expectation of

privacy in his girlfriend's apartment and the alleged consent to

search she gave to the police was not valid. Two police officers

from the Plainfield Police Department, Detectives Elias Muhammad

1
 A Union County Grand Jury returned Indictment No. 14-04-0311,
charging defendant with fourth-degree possession of CDS, N.J.S.A.
2C:35-10.3(a)(c); third-degree possession of CDS, N.J.S.A. 2C:35-
10(a)(1); third-degree possession of CDS with intent to
distribute, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(3); fourth-
degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-
5(a)(1) and 2C:35-5(b)(12); and third-degree possession of CDS
with intent to distribute in a school zone, N.J.S.A. 2C:35-7.

 3 A-0737-15T4
and Troy Alston, who were involved with defendant's arrest and the

discovery of the evidence seized at the scene of his arrest and

his girlfriend's apartment, were the only witnesses to testify at

the suppression hearing. The facts adduced at the hearing are

summarized as follows.2

 On November 6, 2013, Muhammad and Alston were patrolling in

an unmarked police car in a known high-crime, high-narcotic area.

They observed two males standing in front of a house that Muhammad

was familiar with from being previously involved with the execution

of a search warrant at that location, "which resulted in multiple

arrests and the seizure of [CDS]." Muhammad saw a third man, Mark

Jackson, who was known to the detective from prior CDS related

encounters, approaching the other two men, and simultaneously

observed one of them looking down at an object in his hand. As

Jackson approached, one of the men noticed the detectives

approaching them "and said, oh, the narcs." The defendant and the

other unknown man turned and began jogging toward the rear of the

yard.

2
 The trial court made findings, especially with regard to the
search of defendant's girlfriend's apartment, based upon police
reports that were marked for identification, used to refresh the
witnesses recollections, but not admitted into evidence. Despite
the fact that the documents were not admitted, both parties adopted
those findings on appeal and, for that reason, so do we.

 4 A-0737-15T4
 Alston – who was now outside the car – "yelled, stop, police.

I want to talk to you." Both men began running south toward the

rear of the property. A chase ensued and both men jumped a chain

link fence and separated. Muhammad pursued defendant as he ran,

while Alston returned to the police vehicle. Muhammad continued

to pursue defendant on foot, defendant eventually fell to the

ground, and as he did so, he pulled a small plastic bag from his

waistband and threw it away. It landed only about three feet away

from him. Alston and Muhammad secured defendant, and Muhammad

retrieved the bag from the ground, which the police later

determined contained CDS and contraband related to its sale.

 Later the same day at headquarters, defendant's girlfriend,

Kindrins McLeanor, asked Alston for assistance. She explained

that she had locked her house keys inside her apartment and that

defendant had another set of keys, and asked if she could retrieve

the second set of keys from his property inventory. Alston asked

when defendant lived with her, and she explained that he "stayed

with her from time to time." McLeanor asked why defendant was

arrested, and when Alston explained it was for narcotics, McLeanor

"appeared shocked and upset [and told Alston] she was in school

and didn't need this in her life right now." Alston then asked

"if she would sign a permission to search form to allow the

officers to search her apartment." Although she refused to sign

 5 A-0737-15T4
the form, she agreed to allow officers to go to her apartment and

search it.

 McLeanor and several officers returned to her apartment, and

once inside, "she pointed to one closet in the hallway and another

closet in her bedroom and stated that all of [defendant's] things

were in those two places." Inside the closets, the officers found

CDS in closed bags3 and two identification cards bearing

defendant's name.

 After considering the evidence, the trial court denied

defendant's motion4 reasoning that the officers had a

"particularized suspicion that the [d]defendant had or was about

to engage in criminal wrongdoing and [the officer] was therefore

justified in initiating an investigatory stop." Citing to State

v. Citarella, 154 N.J. 272, 279 (1998), the court relied upon the

3
 The officer's report contained more specific information about
the location of the CDS and what was recovered. It stated, and
the trial court found, some of the CDS was located in a "hallway
closet" inside a "black leather pouch" containing plastic bags and
the rest was discovered in a bedroom closet inside a brown box
containing CDS and additional plastic bags that also contained
CDS. Neither the reports nor the court stated whether the "pouch,"
the plastic bags, or the box were open. At oral argument, the
State candidly stipulated that the CDS was located in closed bags
and that the box and CDS discovered in the bedroom closet were
located inside a blue colored plastic bag, as stated in the police
report.
4
 There is no order in the record memorializing the trial court's
decision denying defendant's motion to suppress.

 6 A-0737-15T4
officers' "experience, expertise and training," including their

involvement in the execution of a narcotics search warrant that

had been issued for the location where they observed defendant and

with Mark Jackson in prior drug related encounters. It also cited

to the fact that defendant ran away when he either recognized or

was informed that the officers – "narcs" – were present.

 The court found defendant did not have standing to challenge

the admission of the narcotics he threw away because he

"attempt[ed] to discard the bag away from his person when he fell

to the ground" and "[a]ny privacy interest [defendant] had in the

bag was diminished when he discarded the bag." As to whether

defendant's girlfriend gave valid consent to search her apartment

and his personal belongings, the court found that because the

apartment belonged to the girlfriend, only her consent was needed

and she gave knowing and voluntary consent to search it. Finally,

the court concluded that defendant did not have a privacy interest

in the apartment because it was not his apartment, and "[h]e simply

kept things in her apartment from time to time."

 After the court denied defendant's motion, he pled guilty to

one count of the indictment, preserving his right to appeal the

motion's denial, and the court dismissed the other four counts.

The court later sentenced defendant and this appeal followed.

 7 A-0737-15T4
 Our review of the denial of a suppression motion is limited.

See State v. Handy, 206 N.J. 39, 44 (2011). We review a motion

judge's factual findings in a suppression hearing with great

deference. State v. Gonzales, 227 N.J. 77, 101 (2016). We "must

uphold the factual findings underlying the trial court's decision

so long as those findings are supported by sufficient credible

evidence in the record." State v. Gamble, 218 N.J. 412, 424

(2014); see also State v. Scriven, 226 N.J. 20, 32-33 (2016). We

defer "to those findings of the trial judge which are substantially

influenced by [the] opportunity to hear and see the witnesses and

to have the 'feel' of the case, which a reviewing court cannot

enjoy." State v. Elders, 192 N.J. 224, 244 (2007) (quoting State

v. Johnson, 42 N.J. 146, 161 (1964)). We owe no deference,

however, to the trial court's legal conclusions or interpretation

of the legal consequences that flow from established facts. Our

review in that regard is de novo. State v. Watts, 223 N.J. 503,

516 (2015); State v. Vargas, 213 N.J. 301, 327 (2013).

 Applying this standard, we turn first to defendant's

contention that the police were not entitled to rely on his

girlfriend's consent to search her home and the bags in which the

CDS was discovered. Quoting State v. Suazo, 133 N.J. 315, 320

(1993), defendant contends a "third party who possesses the

authority to consent to a search of the premises generally,

 8 A-0737-15T4
however, may lack the authority to consent to a search of specific

containers found on those premises." We agree.

 At the outset, we concur with the trial court's determination

that the police were justified in relying upon McLeanor's consent

to search her apartment for CDS belonging to defendant. While

defendant, as an overnight guest in his girlfriend's apartment,

enjoyed the privacy protections provided to her under both the

United States and New Jersey Constitutions, see State v. Stott,

171 N.J. 343, 357 (2002) ("overnight guests have the same or

similar expectation of privacy in the homes of their hosts as do

the hosts or owners" (citing Minnesota v. Olson, 495 U.S. 91, 98,

110 S. Ct. 1684, 1689, 109 L. Ed. 2d 85, 94 (1990))), McLeanor was

authorized to give a consent to search her home. See State v.

Cushing, 226 N.J. 187, 198-99, 201 (2016).

 A third party's consent to search, however, is not without

limits. McLeanor's consent was all that was required to conduct

a search of the entire house, to the extent she did not withhold

consent as to areas that were under defendant's exclusive use or

control, if any, see ibid.; see also United States v. Matlock, 415

U.S. 164, 170-71, 94 S. Ct. 988, 992-93, 39 L. Ed. 2d 242, 249-50

(1974), or she disclaimed ownership of an item located within the

area searched. As the Court explained in Suazo,

 9 A-0737-15T4
 [a] third party who possesses the authority
 to consent to a search of premises generally,
 however, may lack the authority to consent to
 a search of specific containers found on those
 premises. [The] consent does not extend to
 containers in which the consenting party has
 disclaimed ownership[, or] to property within
 the exclusive use and control of another.

 [Suazo, supra, 133 N.J. at 320 (citations
 omitted).]

 Here, based on Alston's reporting of McLeanor's consent and

the ensuing search, she disavowed ownership of any of defendant's

belongings. As a result, once the police discovered closed bags

belonging only to defendant, the officers were obligated to secure

McLeanor's apartment from the outside, see Brown v. State, __ N.J.

__, __ (2017) (slip op. at 35-37), and seek a warrant to seize and

search those bags, unless they could demonstrate that "the consent

was obtained from a person with a sufficient relationship to the

container." State v. Lee, 245 N.J. Super. 441, 446 (App. Div.

1991), overruled on other grounds, State v. Johnson, 193 N.J. 528,

548-49 (2008). As we explained in Lee,

 [a] third person's consent "cannot validate a
 warrantless search when the circumstances
 provide no basis for a reasonable belief that
 shared or exclusive authority to permit
 inspection exists in the third person. . . ."
 United States v. Block, 590 F.2d 535, 540 (4th
 Cir. 1978). A consent to search especially
 lacks validity where the third person actually
 disclaims any right of access. Ibid. Even
 where a third party has authority to consent
 to a search of the premises, that authority

 10 A-0737-15T4
 does not extend to a container in which the
 third party denies ownership, because the
 police are left with "no misapprehension as
 to the limit of [the third party's] authority
 to consent." People v. Egan, 250 Cal. App.
 2d 433, 58 Cal. Rptr. 627 (Cal. Ct. App. 1967).

 [Lee, supra, 245 N.J. Super. at 447 (second
 and third alterations in original).]

 Once police had knowledge that defendant, and not McLeanor,

had a protected privacy interest in the containers, they should

not have conducted a warrantless search of the "pouch" or plastic

bags. See Suazo, supra, 133 N.J. at 321-22; see also State v.

Maristany, 133 N.J. 299, 306-07 (1993).

 We reach a different conclusion as to the CDS thrown away by

defendant while Muhammad was chasing him. According to defendant,

because the police officers were not justified in stopping him,

there was insufficient "attenuation between the unconstitutional

stop" and the seizure of the drugs. The trial court, he argues,

incorrectly determined that he voluntarily abandoned the CDS and

therefore had no standing to challenge the constitutionality of

the seizure of that evidence. We find no merit to defendant's

argument.

 We conclude from our review, that Muhammad was in the process

of attempting to conduct a permissible investigatory stop when

defendant discarded the CDS. We reject defendant's argument about

 11 A-0737-15T4
attenuation5 and affirm the denial of the suppression motion,

substantially for the reasons stated by the trial court in its

oral decision. We add the following comments.

 An investigatory stop "occurs during a police encounter when

'an objectively reasonable person' would feel 'that his or her

right to move has been restricted.'" State v. Rosario, __ N.J.

__, __ (2017) (slip op. at 18) (quoting State v. Rodriguez, 172

N.J. 117, 126 (2002)). An investigatory stop "must be based on

an officer's 'reasonable and particularized suspicion . . . that

an individual has just engaged in, or was about to engage in,

criminal activity.'" Id. at 18-19 (alteration in original)

(quoting State v. Stovall, 170 N.J. 346, 356 (2002)).

 When reviewing whether the State has established a valid

basis for an investigatory stop, we "give weight to 'the officer's

knowledge and experience' as well as 'rational inferences that

could be drawn from the facts objectively and reasonably viewed

in light of the officer's expertise.'" Citarella, supra, 154 N.J.

at 279 (quoting State v. Arthur, 149 N.J. 1, 10-11 (1997)). Facts

5
 Defendant's reliance on State v. Williams, 410 N.J. Super.
549, 552 (App. Div. 2009) (addressing "whether flight from an
unconstitutional investigatory stop that could justify an arrest
for obstruction automatically justifies the admission of any
evidence revealed during the course of that flight"), certif.
denied, 201 N.J. 440, is inapposite in light of our conclusion
that Muhammad's stop of defendant was not unconstitutional.

 12 A-0737-15T4
that might seem innocent when viewed in isolation may sustain a

finding of reasonable suspicion when considered in the aggregate.

Stovall, supra, 170 N.J. at 368 (citing Citarella, supra, 154 N.J.

at 279-80) ("[A] group of innocent circumstances in the aggregate

can support a finding of reasonable suspicion.").

 Applying these principles, we conclude, as did the trial

court, that Muhammad formed a reasonable and particularized

suspicion defendant had engaged in, or was about to engage in,

criminal activity based upon the aggregate of his observations of

defendant's conduct involving a known drug offender in a known

high-crime location where Muhammad had prior experience dealing

with illicit sales of CDS. See State v. Pineiro, 181 N.J. 13, 26

(2004) (considering an area's reputation for crime a relevant

factor when assessing reasonable suspicion). Based on the totality

of these circumstances, Muhammad was justified in conducting an

investigatory stop, even before defendant ran away. Defendant's

flight provided "an additional factor that heighten[s] the level

of reasonable articulable suspicion already engendered by

[defendant's] antecedent actions." Citarella, supra, 154 N.J. at

281; see also State v. Tucker, 136 N.J. 158, 168 (1994) (concluding

flight, when combined with other evidence of criminal activity,

can justify a suspect's detention or arrest).

 13 A-0737-15T4
 The detective's reasonable suspicion that defendant was

engaging in a drug transaction, coupled with defendant's flight,

justified the seizure of the CDS that defendant discarded during

his flight. State v. Ramos, 282 N.J. Super. 19, 20-23 (App. Div.

1995). When a defendant abandons property during flight, he or

she "will have no right to challenge the search or seizure of that

property." Johnson, supra, 193 N.J. at 548. The denial of

defendant's suppression motion as to the discarded CDS was

supported by sufficient credible evidence, and it was legally

correct.

 Because we conclude that the denial of the suppression motion

as to the CDS discovered in McLeanor's apartment must be reversed,

and his conviction therefore vacated, we need not address

defendant's arguments about his sentence.

 Defendant's conviction is reversed. The motion to suppress

is affirmed in part and reversed in part. We remand for further

proceedings consistent with our opinion. We do not retain

jurisdiction.

 14 A-0737-15T4