[No. A127228. First Dist., Div. One. Sept. 24, 2010.]

In re D.C., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
D.C., Defendant and Appellant.

980

**Counsel**

Stephanie Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

**Opinion**

**MARGULIES, J.**—Appellant D.C., a minor, was continued as a ward of the court after police found stolen goods in his bedroom during a search of the apartment he shared with his mother and older brother. Police originally went to the apartment to conduct a probation search relating to the older brother, suspecting he might have been involved in local crimes. As they arrived, the officers obtained consent from appellant's mother to search the entire apartment. Appellant objected and attempted to block the officers' entry, but he relented when his mother told him to "get out of the way."

Appellant contends evidence of the stolen goods should have been suppressed because (1) his mother did not have the authority to consent to a search of his bedroom and (2) his objection to the officers' entry to the apartment precluded a consensual search under *Georgia v. Randolph* (2006) 547 U.S. 103 [164 L.Ed.2d 208, 126 S.Ct. 1515] (*Randolph*). While the arguments appellant raises might have prevailed were he an adult, we conclude his mother, as the parent of a minor child, had the authority to consent to a search of his bedroom and to override any objection he raised to the search of her apartment.

## I. BACKGROUND

On November 25, 2009, the Alameda County District Attorney filed a wardship petition under Welfare and Institutions Code section 602, subdivision (a), alleging appellant, then age 15, had received stolen property (Pen. Code, § 496). The petition also alleged appellant had previously been found to have threatened a witness, in violation of Penal Code section 140.

Officer Morris, a police officer with the Oakland Housing Authority, testified that on October 26, 2009, he and other officers were called to an apartment building on a report of possible narcotics activity. After they arrived, an officer detained appellant's adult brother, suspecting he was

involved in the reported activity. In the meantime, a building resident reported to a third officer that his apartment had been burglarized.

Running a check, the officers learned appellant's brother was on probation and the terms of his probation permitted warrantless searches. Officer Morris escorted the brother to the apartment where he lived with appellant and their mother, intending to conduct a probation search. On the way, they met appellant's mother and explained to her they wanted to search the apartment to confirm appellant's brother was not involved in the narcotics activity or the burglary. She consented to the search.[1]

At the time, appellant was lingering nearby. As the officers approached the apartment door he barred their way, telling them, "You're not going to enter the apartment." When his mother told him to "get out of the way," appellant complied, stepping aside and remaining outside the apartment while the officers entered and began to search. During their search of appellant's bedroom, one of three in the apartment, the officers found some of the items reportedly taken in the burglary. By the time the officers completed their search of his bedroom, appellant was no longer outside the apartment.

The juvenile court denied appellant's motion to suppress the evidence taken from his room and found the allegations of the petition to be true. The court continued appellant as a ward of the court and continued him on probation in the custody of his mother.

## II. DISCUSSION

Appellant contends the evidence found in his bedroom should have been suppressed because the warrantless search occurred without his consent and over his objection.

### A. *Legal Background*

█ In reviewing a ruling on a motion to suppress, we defer to the trial court's factual findings when supported by substantial evidence, but we exercise our independent judgment in determining whether, on the facts so found, the search was lawful. (*People v. Redd* (2010) 48 Cal.4th 691, 719 [108 Cal.Rptr.3d 192, 229 P.3d 101].) A warrantless search is presumed to be unreasonable, and the prosecution bears the burden of demonstrating a legal justification for the search. (*People v. Williams* (1999) 20 Cal.4th 119, 127 [83 Cal.Rptr.2d 275, 973 P.2d 52].)

---

[1] At some point, appellant's mother signed a consent form. The document authorizes the officers to search "the whole interior of my apartment #2."

■ Consent has long been recognized as excusing the requirement of a search warrant. "The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects. [Citations.] The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched, [citation], or from a third party who possesses common authority over the premises . . . ." (*Illinois v. Rodriguez* (1990) 497 U.S. 177, 181 [111 L.Ed.2d 148, 110 S.Ct. 2793]; see similarly *People v. Panah* (2005) 35 Cal.4th 395, 466 [25 Cal.Rptr.3d 672, 107 P.3d 790].) The principles governing consent were established in *United States v. Matlock* (1974) 415 U.S. 164 [39 L.Ed.2d 242, 94 S.Ct. 988] (*Matlock*), in which the Supreme Court held that consent to a search given by a single resident of a residence occupied by several persons "is valid as against [an] absent, nonconsenting person" so long as the consenting resident "possesses common authority over [the] premises" with the absent resident. (*Id.* at p. 170.) "Common authority" was defined in *Matlock* not as an issue of property law "but [as resting] rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." (*Id.* at p. 171, fn. 7.)

In addition, officers may rely on the consent of a person who they "reasonably and in good faith believe[] . . . ha[s] the authority to consent" to a particular search. (*People v. Ledesma* (2006) 39 Cal.4th 641, 703 [47 Cal.Rptr.3d 326, 140 P.3d 657].) Such apparent authority to consent exists if " 'the facts available to the officer at the moment . . . "warrant a man of reasonable caution in the belief" ' that the consenting party had authority over the premises." (*Illinois v. Rodriguez, supra*, 497 U.S. at p. 188.)

### B. *Appellant's Mother's Consent to the Search of His Bedroom*

Appellant argues that, if he were an adult, "there would be no question that his mother's consent would not have permitted" the search of his bedroom, since "[w]here bedrooms within a house have been appropriated for the exclusive use of one of the occupants," other residents cannot give valid consent to a search of the room. He contends the same rule should apply here, since there was no evidence regarding his mother's access to his bedroom.

As appellant argues, it has been held, outside the parent-child context, that adults sharing a residence but maintaining separate bedrooms do not have the apparent authority to consent to the search of one another's bedrooms, at least when officers have no other information about their living arrangements.

(See, e.g., *Beach v. Superior Court* (1970) 11 Cal.App.3d 1032, 1034–1035 [90 Cal.Rptr. 200] [adult sister sharing apartment with adult brothers does not have apparent authority to consent to search of their bedroom]; *U.S. v. Almeida-Perez* (8th Cir. 2008) 549 F.3d 1162, 1172; *U.S. v. Barrera-Martinez* (N.D.Ill. 2003) 274 F.Supp.2d 950, 962 [when adult roommates have separate rooms, exclusive control is presumed].)

California courts, however, have come to a different conclusion when an adult child maintains a bedroom in the home of his or her parents. In *People v. Daniels* (1971) 16 Cal.App.3d 36 [93 Cal.Rptr. 628], the court held that the search of an adult child's bedroom in his parents' home made with the consent of a parent is reasonable "absent circumstances establishing the son has been given exclusive control over the bedroom." (*Id.* at p. 43.) The court reasoned that "[p]arents with whom a son is living, on premises owned by them, do not ipso facto relinquish exclusive control over that portion thereof used by the son. To the contrary, the mere fact the son is permitted to use a particular bedroom, as such, does not confer upon him exclusive control thereof. [Citation.] His occupancy is subservient to the control of his parents. [Citations.] He may be excluded from the premises by them at any time." (*Id.* at p. 44.) Similarly, in *People v. Oldham* (2000) 81 Cal.App.4th 1 [96 Cal.Rptr.2d 343], the court followed *Daniels* in finding valid a father's consent to the search of his adult son's bedroom. The son was a permanent resident in the home, and the father did not regularly enter his son's room (*Oldham*, at p. 7), but the court held that the father's consent to the search was effective because "there was nothing to show [the son] had exclusive control over the bedroom he used or its contents. At most, the evidence showed there was joint control and Father possessed superior control because he had the right to exclude [the son] from the apartment . . . ." (*Id.* at p. 10; see similarly *People v. Egan* (1967) 250 Cal.App.2d 433, 436 [58 Cal.Rptr. 627].)

When the child is a minor, there is an even stronger case for apparent authority in a parent to consent to the search of the child's bedroom. Unlike the parents of adult children, the parents of minor children have legal rights and obligations that both permit and, in essence, require them to exercise common authority over their child's bedroom. Parents have the "right to direct and control the activities of a minor child . . . . [Citations.] 'The liberty interest . . . of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests . . . .' " (*Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1410 [23 Cal.Rptr.3d 609].) Conversely, parents have affirmative legal duties toward their minor children. Most fundamentally, parents have the "responsibility" to support their minor children (Fam. Code, § 3900) and must "exercise reasonable care, supervision, protection, and control" over their conduct (Pen. Code, § 272, subd. (a)(2); see *Williams v. Garcetti* (1993) 5 Cal.4th 561, 570–571 [20 Cal.Rptr.2d 341,

853 P.2d 507]). "By imposing upon parents a duty to exercise reasonable care, supervision, protection, and control over their minor child, Penal Code section 272 is intended to 'safeguard children from those influences which would tend to cause them to become delinquent.' " (*Brekke v. Wills*, at p. 1411.) Parents are also required to ensure their child's attendance at school (Ed. Code, §§ 48260.5, subds. (b)–(c), 48293) and may be held financially responsible for a minor child's misconduct.[2] "[O]ne purpose of the parental liability laws is to encourage responsibility in parents—that is, to encourage parents to exercise effective control over their children." (*Curry v. Superior Court* (1993) 20 Cal.App.4th 180, 187–188 [24 Cal.Rptr.2d 495].)

■ Under *Matlock*, "[c]ommon authority" over a residence is found if there is "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right . . . ." (*Matlock, supra*, 415 U.S. at p. 171, fn. 7.) Given the legal rights and obligations of parents toward their minor children, common authority over the child's bedroom is inherent in the parental role. Carrying out their duty of supervision and control requires a parent to have the ability to monitor their child's activities whenever the parent deems it appropriate, even when the child is in a bedroom nominally regarded as private. Proper exercise of parental duties therefore demands that the parent have "joint access or control" of a minor child's bedroom. This is true regardless of whether the parent finds it necessary to exercise that privilege frequently. Further, given the parental duty of control and supervision, it is reasonable "to recognize that [the parent] has the right to permit the inspection in his own right . . . ." (*Ibid.*) In the absence of evidence suggesting a parent has abdicated this role toward his or her child, police officers may reasonably conclude that a parent can validly consent to the search of a minor child's bedroom.[3]

Although no California decision has addressed directly the apparent authority of a parent to consent to a search of the bedroom of a minor child, our case law has recognized that minor children are treated differently from adults under *Matlock*. In *People v. Jacobs* (1987) 43 Cal.3d 472 [233 Cal.Rptr. 323, 729 P.2d 757], for example, the police went to the defendant's home and, finding him gone, persuaded his 11-year-old stepdaughter to permit them

---

[2] See, e.g., Civil Code section 1714.1 (willful torts); Government Code section 38772, subdivision (b) (graffiti); Education Code section 48904, subdivision (a) (school injuries and property damage); Penal Code section 490.5, subdivision (b) (theft).

[3] The United States Supreme Court has recognized the importance of such parental authority. In *Griffin v. Wisconsin* (1987) 483 U.S. 868 [97 L.Ed.2d 709, 107 S.Ct. 3164], in which the court upheld a statute authorizing a warrantless search of a probationer's residence upon " 'reasonable grounds,' " the court noted that, by analogy, "one might contemplate how parental custodial authority would be impaired by requiring judicial approval for search of a minor child's room." (*Id.* at p. 876.)

to search the house. In ruling the search invalid on the grounds the child could not give valid consent, the court noted, "Minor children . . . do not have coequal dominion over the family home. [Citation.] Although parents may choose to grant their minor children joint access and mutual use of the home, parents normally retain control of the home as well as the power to rescind the authority they have given." (*Id.* at p. 482.) Similarly, in *Vandenberg v. Superior Court* (1970) 8 Cal.App.3d 1048 [87 Cal.Rptr. 876], the court considered the validity of a father's consent to the search of a bedroom he shared with his son. (*Id.* at p. 1053.) Although the son was an adult, the court treated the matter as "subject to the ordinary rules regulating the relationship of parent and minor child" and held, "In his capacity as the head of the household, a father has the responsibility and authority for the discipline, training and control of his children. In the exercise of his parental authority a father has full access to the room set aside for his son for purposes of fulfilling his right and duty to control his son's social behavior and to obtain obedience. [Citation.] Permitting an officer to search a bedroom in order to determine if his son is using or trafficking in narcotics appears to us to be a reasonable and necessary extension of a father's authority and control over his children's moral training, health and personal hygiene." (*Id.* at pp. 1054–1055.)

While there is very little evidence in the record regarding the relationship between appellant and his mother, what little information we have suggests his mother not only had apparent authority to consent to the search of his room, but actual authority as well. It is notable that when appellant's mother told him to let the officers pass, he moved aside, acknowledging his mother's superior authority. Thereafter, appellant did not attempt to intervene to prevent the search of his room, implicitly recognizing his mother's control over the entire premises.[4]

In arguing his mother lacked apparent authority to consent to the search, defendant relies on *U.S. v. Whitfield* (D.C. Cir. 1991) 291 U.S. App.D.C. 243 [939 F.2d 1071] (*Whitfield*), in which the court held that a mother had no apparent authority to consent to a search of the bedroom of an adult son who resided with her. While recognizing the mother might have had " 'joint access' " to her son's room, which was not locked, the court held the officers could not presume merely from the family relationship that she had the " 'mutual use' " of the room required by *Matlock*. (*Whitfield*, at p. 1074.) As the court noted, "[t]he agents never asked Mrs. Whitfield whether she cleaned

---

[4] We find no substance in appellant's argument his mother's "limited mobility" from use of a wheelchair "made it unlikely that she actually exercised mutual use of the bedroom." As discussed above, "mutual use" does not necessarily require the frequent entry into a room. In any event, there is no reason to think appellant's mother exercised any less supervision over the activities of her son in his bedroom than a mother who did not need to use a wheelchair.

her son's room, visited with him there, stored any of her possessions in the room, watched television there, or made use of the room at any time for any purpose." (*Ibid.*)

As suggested by the discussion above, *Whitfield* is against the weight of California authority, and it does not reflect a clear federal consensus, either.[5] More important, as a result of the rights and obligations discussed above, the parents of a minor child are in a considerably different position from the parents of an adult child. Even if *Whitfield* is taken to state the correct rule applicable to the apparent authority of parents of adult children, the same rule does not hold for the parents of a minor child.[6]

Defendant also argues a parent cannot waive the Fourth Amendment rights of a child, citing *In re Scott K.* (1979) 24 Cal.3d 395 [155 Cal.Rptr. 671, 595 P.2d 105] (*Scott K.*), in which the Supreme Court ruled invalid a father's consent to the police search of his minor son's toolbox. The entire area of law governed by *Matlock*, however, concerns just this subject—the waiver by one occupant of the Fourth Amendment warrant requirement that would otherwise apply to a search of premises jointly occupied. There is no doubt that, under circumstances consistent with *Matlock*, a parent can waive the requirement of a warrant for the search of premises jointly occupied with a child, just as an unrelated cotenant can. *Scott K.* is not to the contrary. It announces no broad prohibition against parental waiver of children's Fourth Amendment rights. Rather, *Scott K.* holds only that the evidence presented was insufficient to demonstrate the father had the apparent authority over his minor son's toolbox necessary to consent to a search, reasoning that "[j]uveniles are entitled 'to acquire and hold property,' " and while "[p]arents may have a protectable interest in property belonging to children, . . . that fact may not be assumed." (24 Cal.3d at pp. 404–405.) Concerning the issue relevant here, a parent's authority to consent to a search of a child's room, as opposed to a closed container within the room, *Scott K.* is consistent with our decision. The Supreme Court did not question the validity of the father's consent to the search of his son's room (*id.* at p. 399), but only the father's consent regarding the closed container belonging to his son (*id.* at p. 405). Because a

---

[5] Several federal decisions have reached a conclusion consistent with California's decisions. (*U.S. v. Rith* (10th Cir. 1999) 164 F.3d 1323, 1331; *U.S. v. Block* (4th Cir. 1978) 590 F.2d 535, 541; *U.S. v. Peterson* (4th Cir. 1975) 524 F.2d 167, 179; *U.S. v. DiPrima* (1st Cir. 1973) 472 F.2d 550, 551.)

[6] Defendant also discusses at length *Beach v. Superior Court, supra,* 11 Cal.App.3d 1032, 1034–1035, *U.S. v. Almeida-Perez, supra,* 549 F.3d 1162, 1171–1172, and *U.S. v. Barrera-Martinez, supra,* 274 F.Supp.2d 950, 961–962. Because each involved an adult consenting to the search of the bedroom of another adult, they are distinguishable from the circumstances of a parent and minor child.

person's authority to consent to the search of closed containers within a residence is evaluated separately from the authority to consent to a search of the residence itself, the ruling of *Scott K.* regarding the toolbox has no bearing on the issue here.[7]

## C. *Appellant's Objection*

Appellant also contends the police could not validly search his bedroom because he objected to their entry into the apartment.

The issue addressed in *Matlock* was the validity of the consent of one resident present at a home as against the rights of a second resident who, because of his or her absence from the home, had not given consent. A more complex situation is presented when two residents, both on the scene, disagree about police entry. Considering this situation in *Randolph, supra,* 547 U.S. 103, the Supreme Court held that when a husband and wife disagree about police admittance to their home, a warrantless search cannot be justified on grounds of consent, notwithstanding the consent of one of the parties. (*Id.* at p. 115.) Explaining its decision, the court began with the observation that in consent cases, "great significance [is] given to widely shared social expectations . . . ." (*Id.* at p. 111.) Applying the principle, the court noted, "it is fair to say that a caller standing at the door of shared premises would have no confidence that one occupant's invitation was a sufficiently good reason to enter when a fellow tenant stood there saying, 'stay out.' Without some very good reason, no sensible person would go inside under those conditions." (*Id.* at p. 113.) The ordinary assumption, echoed in the law governing the relationship among cotenants of property, is that joint occupants have equal authority and grant access to their residence only upon mutual consent. (*Id.* at p. 114.) Accordingly, the court concluded, "Since the co-tenant wishing to open the door to a third party has no recognized authority in law or social practice to prevail over a present and objecting co-tenant, his disputed invitation, without more, gives a police officer no better claim to reasonableness in entering than the officer would have in the absence of any consent at all." (*Ibid.*)

---

[7] See, e.g., *People v. Jenkins* (2000) 22 Cal.4th 900, 973 [95 Cal.Rptr.2d 377, 997 P.2d 1044] ("the consent to a search given by a person with authority to consent to a search of the premises does not necessarily supply consent to search personal property found within the premises"); *Trulock v. Freeh* (4th Cir. 2001) 275 F.3d 391, 408 ("authority to consent to the search of a general area 'cannot be thought automatically to extend to the interiors of every discrete enclosed space capable of search within the area' "); see also *People v. Daniels, supra,* 16 Cal.App.3d at page 45; *People v. Egan, supra,* 250 Cal.App.2d at page 436 (both distinguishing between parental authority to consent to a search of premises and of a child's property within premises).

█ If *Randolph* applies equally here, the juvenile court was required to grant the motion to suppress. When the officers sought consent to search from appellant's mother, appellant objected plainly and unmistakably, barring the door and prohibiting entry by police. On its facts, however, *Randolph* governs only a disagreement between joint *adult* occupants having apparently equal authority over a residence. Because of the unique nature of the rights and duties of parents with respect to their children, we conclude *Randolph* does not require the police to defer to an objecting minor child over a consent to search by his or her parent.

As discussed above, parents have a legal duty and a corresponding right to control and supervise the activities of their children. (*Brekke v. Wills, supra*, 125 Cal.App.4th at p. 1410.) Unlike objecting cotenants, for whom there is "no recognized authority in law or social practice to prevail over" one another (*Randolph, supra*, 547 U.S. at p. 114), a parent has legally recognized standing to prevail over the objections of a minor child, particularly concerning the control of premises owned or leased by the parent. That legal authority reflects common social expectation and practice regarding the relative power of children and parents.

Because of this difference in legal status and the traditional notions of parental authority underpinning it, the "widely shared social expectations" (*Randolph, supra*, 547 U.S. at p. 111) applicable to a disagreement between parent and minor child are different from those applicable to a disagreement between adult cotenants. A "caller standing at the door of shared premises" (*id.* at p. 113), confronted with a parent inviting entry and a minor child objecting, would have little doubt that entry was authorized. *Randolph* recognized this difference, expressly noting that expectations, and therefore the reasonableness of an entry, might be different if "the people living together fall within some recognized hierarchy, like a household of parent and child or barracks housing military personnel of different grades . . . ," thereby permitting a "societal understanding of superior and inferior." (*Id.* at p. 114.) Accordingly, under the analysis of *Randolph*, the police were not required to respect appellant's objection.

Appellant argues the officers' failure to honor his objection to their entry constituted a violation of his constitutional rights, noting minors are entitled to the protections of the Constitution and, in particular, the search and seizure provisions of the Fourth Amendment. (E.g., *New Jersey v. T. L. O.* (1985) 469 U.S. 325, 333 [83 L.Ed.2d 720, 105 S.Ct. 733] [minors protected by 4th Amend.]; *In re William G.* (1985) 40 Cal.3d 550, 556–557 [221 Cal.Rptr. 118, 709 P.2d 1287] [same]; see also *In re Gault* (1967) 387 U.S. 1, 30–31 [18 L.Ed.2d 527, 87 S.Ct. 1428] [minors entitled to due process protections in

delinquency proceedings].) While there is no question minors are entitled to the protection of the Fourth Amendment, adults and minors are not necessarily entitled to the same degree of constitutional protection. As noted in *Scott K., supra,* 24 Cal.3d at page 401, a search and seizure decision, "[b]y no means are the rights of juveniles coextensive with those of adults." "Minors' rights may be legitimately restricted to serve the state's interest in promoting the health and welfare of children. [Citation.] '[E]ven where there is an invasion of protected freedoms "the power of the state to control the conduct of children reaches beyond the scope of its authority over adults".' " (*William G.,* at p. 558, fn. 6.) To fulfill their duty of supervision, parents must be empowered to authorize police to search the family home, even over the objection of their minor children. While a minor child's Fourth Amendment rights may be narrower in these circumstances than those of an adult cohabiting with another, the difference is not great; police will still be required to obtain the consent of a person with common authority over the home—the parent—before the requirement of a search warrant is excused.[8]

Appellant also argues that "[i]f a minor can give valid consent to search his residence, then he or she must also have the authority to deny consent." It is true some minor children have been found to have common authority over a family home and therefore to be capable of consenting to a search when their parents are not at home. The existence of such authority depends upon the child's age, maturity, and role in the family. (Cf. *People v. Jacobs, supra,* 43 Cal.3d at pp. 481–482 [11 year old has no apparent authority to consent]; *U.S. v. Sanchez* (10th Cir. 2010) 608 F.3d 685, 688–689 [15 year old has common authority to consent]; see also *State v. Schwartz* (2006) 332 Mont. 243 [136 P.3d 989, 991–992] [as a matter of law under the Mont. Constitution, a child under the age of 16 cannot give valid consent].)

The issue here, however, is not whether a minor child can deny consent to entry by the police into a family home *when parents are absent.* Rather, the issue here is whether a child's objection overrides simultaneous consent by a parent. Even those relatively rare cases finding authority in a minor child to consent to a search of the family home do not hold that a minor's consent is effective as against a parent's objection.

---

[8] Appellant again argues parents cannot waive the constitutional rights of their children, this time citing abortion cases such as *American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307 [66 Cal.Rptr.2d 210, 940 P.2d 797]. These cases do not, however, hold that parents cannot waive their children's rights. *Lungren,* for example, holds that children's privacy rights include the right to obtain an abortion without state notification of their parents. (*Id.* at p. 359.) The issue of waiver simply does not arise.

## III. DISPOSITION

The judgment of the trial court is affirmed.

Marchiano, P. J., and Banke, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 12, 2011, S187755.