COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS






THE STATE OF TEXAS,

                            Appellant,

v.

ARTURO JULIAN DURAN,

                            Appellee.

§
 
§
 
§
 
§
 
§
 
 §

 §


No. 08-10-00349-CR

Appeal from the

384th Judicial District Court

of El Paso County, Texas 

(TC# 20100D02226) 






O P I N I O N

            While executing a search warrant for “A residence at 4737 Hercules, El Paso, Texas
79904,” officers noticed a detached garage that had been converted into a separate living unit. 
Appellant Arturo Julian Duran, a seventeen-year-old freshman in high school, lived in the garage,
and his father, Arturo Duran, lived in the house. After Appellant’s father gave the agents
permission to search the garage, they found child pornography on a computer there. Appellant
was subsequently indicted for possession of child pornography. He filed a motion to suppress,
arguing that the search warrant was limited to the house. The trial court granted the motion. On
appeal, the State contends that the warrant authorized the search of the garage and, if it did not,
Appellant’s father had apparent authority to consent to the search of the garage. Agreeing with
the State’s second contention, we reverse the trial court’s ruling and remand for trial.
Evidence From The Suppression Hearing
            Agents with Immigration and Customs Enforcement (ICE) determined that a computer
accessed child pornography using the internet at 4737 Hercules. The name associated with the
internet protocol address for the computer was “Arturo Duran.” Based on “computer checks,”
ICE agents determined that Appellant’s father and Jose Duran were the only occupants of 4737
Hercules. The checks did not reveal that Appellant lived there. ICE agents conducted
surveillance at the address on three occasions. Using a driver’s license picture for comparison,
the agents observed Appellant’s father leaving the premises.
            Agent Eileen Luera then submitted an application for a search warrant. The affidavit in
support of the warrant sought to search “the entire premises located at 4737 Hercules.” A federal
magistrate judge granted the application. The style of the warrant is “In the Matter of the Search
of A residence at 4737 Hercules, El Paso, Texas 79904.” Attachment A described the property to
be searched as:
4737 Hercules, El Paso, TX 79904. The property is further described as a single
story residential building serviced in white stucco. The residence has a grey
shingled pitched roof and bordered with brown flashing [sic]. There are two four
pane windows situated on each side of the black in color security front door.

This description was accompanied by a photo of the premises. A garage is not visible in the
photo. Attachment B authorized the search and seizure of “images of child pornography and files
containing images of child pornography in any form wherever it may be stored or found . . . .”
            At the suppression hearing, Appellant introduced photographs in which part of a structure
that looks like a garage is visible to the right and partially behind the house. A typical garage
door can be seen on the structure. Agent Luera testified that she did not realize that the garage
was detached when she submitted the application for the search warrant.
            Luera and several other agents executed the search warrant. Appellant’s father answered
the door of the house and told the agents that Jose Duran, the other known occupant of the
premises had recently moved out.
            The agents apparently found no pornography in the house. Appellant’s father explained
how it was that the agents eventually searched the garage: “Well, the thing is that when . . . they
sat me down in the dining room, and I had all the officers there . . . [t]hat’s when one of the ICE
agents turned around and looked through the window . . . and said, What is that?” He replied,
“That’s where my son lives.” The agents asked him if they could search the garage, and he gave
them permission to do so.



            Agent Luera indicated that the agents requested the father’s consent because she did not
believe that the search warrant authorized a search of the garage. When requesting consent, the
agents did not ask about the circumstances under which Appellant lived in the garage. For
example, they did not ask whether he paid rent. Explaining why they did not ask this question,
one agent testified, “As far as I knew, he was a student.”
            The United States Attorney’s Office had a policy of not prosecuting anyone under
eighteen years’ old. Therefore, once the agents discovered that the perpetrator was seventeen
years’ old, they contacted the El Paso Police Department to proceed with the investigation. After
El Paso police detectives viewed the child pornography on the computer, Appellant personally
typed a statement in the presence of one of the detectives. In the statement, Appellant said that
he lived at “4737 Hercules with [his] father.” Specifically, he lived in a garage that was in the
backyard and that was “converted to a studio.” Appellant described himself as a freshman in
high school. He admitted that he downloaded the child pornography and that he “viewed it more
than several times.” However, he claimed that he downloaded the material out of curiosity, and
not for “sexual pleasure.”
            Appellant’s father testified that he pays all the bills for the property, including the bill for
the computer service. He had no access to the garage, and Appellant had the only key to its door. 
Appellant did not pay rent to live in the garage. But because he had “his privacy there,” he was
“asked to do chores, maintain his living area, clean,” and do yard work. Appellant’s father stated
that the garage has its own bathroom and appliances, including a refrigerator, microwave, and
television. Appellant had everything he needed to live there without having to go into the main
house.
            In its written findings of fact and conclusions of law, the trial court found that the
“application for the search warrant did not include the detached garage[] located at the same
address” and the search warrant “did not include the detached garage[] located at the same
address.” The court found the testimony of Appellant’s father to be credible and specifically
noted the following testimony: the garage had been converted into an apartment, Appellant had
the only key to the garage and exclusive authority over the garage, and Appellant’s father did not
have access to the garage and had not gone into it after Appellant moved there. The court
concluded that the search warrant did not authorize the search and seizure of any property from
the garage, Appellant’s father did not have “any authority” to consent to search the garage, the
search of the garage was illegal because it was conducted without a valid warrant or valid
consent, and any statements made by Appellant after the search are inadmissible as fruits of the
poisonous tree.
The Search Warrant
            In its first issue, the State asserts that the search warrant authorized the search of the
garage. We review this issue de novo to the extent that it turns solely on the language of the
warrant. See Peralta v. State, 338 S.W.3d 598, 607 (Tex.App.--El Paso 2010, no pet.).
            The State argues that the warrant incorporates the affidavit that was attached to the
application for the warrant. The affidavit sought to search “the entire premises located at 4737
Hercules.” The State construes “entire premises” to encompass the detached garage.
            When an affidavit is attached to the warrant or incorporated by reference into the warrant,
the two documents should be considered together as defining the place to be searched. Long v.
State, 132 S.W.3d 443, 446 n.11 (Tex.Crim.App. 2004); Affatato v. State, 169 S.W.3d 313, 316-17 (Tex.App.--Austin 2005, no pet.). In this case, however, the affidavit was not attached to the
warrant. Nor can we agree with the State that the warrant incorporated the affidavit by reference. 
There is only one mention of the affidavit in the warrant. It states: “I find that the affidavit(s), or
any recorded testimony, establish probable cause to search and seize the person or property.” 
Nothing in this statement incorporates the affidavit into the warrant.
            The State also argues that even if the warrant does not incorporate the affidavit, the
warrant still authorized the search of the garage. In examining a warrant’s description of the
place to be searched, we must follow a commonsensical and practical approach, rather than an
overly technical one. See Long, 132 S.W.3d at 448. Here, the warrant defined the place to be
searched as “4737 Hercules, El Paso, TX 79904,” and authorized the agents to search for images
of child pornography “wherever it [sic] may be . . . found” on that property. Although the house
was the only structure specifically identified on the property, the agents were authorized to search
other structures within the curtilage of the house. It is well settled that a warrant that authorizes
the search of a residence ordinarily authorizes the search of structures within the curtilage of the
residence, such as a detached garage. See id. at 448-49 & n.23; see also Hughes v. State, 843
S.W.2d 591, 595 n.5 (Tex.Crim.App. 1992)(“[A] warrant authorizing the search of a house also
permits the search of other structures or areas inside the ‘curtilage’ or area immediately
surrounding the dwelling place.”); Affatato, 169 S.W.3d at 315 (“Detached garages are generally
within the curtilage of a residence.”).
            In this case, however, the detached garage had been converted into a separate living unit. 
To search two separate living units, officers must obtain a warrant for each one. See United
States v. Perez, 484 F.3d 735, 739-41 (5th Cir. 2007); United States v. Cannon, 264 F.3d 875,
879 (9th Cir. 2001). When, as in this case, officers were unaware of the separate living units,
Maryland v. Garrison guides the analysis.
            In Garrison, an officer obtained a warrant to search “2036 Park Avenue third floor
apartment.” 480 U.S. 79, 80, 107 S.Ct. 1013, 1014, 94 L.Ed.2d 72 (1987). “[A]fter making a
reasonable investigation, including a verification of information obtained from a reliable
informant, an exterior examination of the three-story building at 2036 Park Avenue, and an
inquiry of the utility company, the officer who obtained the warrant reasonably concluded that
there was only one apartment on the third floor and that it was occupied by [the suspect].” 
Garrison, 480 U.S. at 81, 107 S.Ct. at 1015. As it turned out, the third floor was divided into
two apartments--one occupied by the suspect, and one occupied by the defendant. Id. at 80, 107
S.Ct. at 1014. On these facts, the Supreme Court held that the warrant was valid when issued,
but the Court indicated that the warrant would not have been valid if the officer should have
known that the third floor had two separate living units. Id. at 85-6, 107 S.Ct. at 1017; see also
Perez, 484 S.W.3d at 741 (citing Garrison for the proposition that one warrant for a multi-unit
structure is valid if “the officers reasonably believed that the premises had only a single unit”). 
Similarly, if the officers who executed the warrant knew or should have known about the error in
the warrant before they entered the premises, they would have been obligated to limit their search
to the suspect’s apartment. Garrison, 480 U.S. at 86, 107 S.Ct. at 1017-18. And as soon as they
discovered that there were two apartments, they were required to stop searching the other
apartment. Id. at 87, 107 S.Ct. at 1018.
            Thus, under Garrison, the relevant questions are whether Agent Luera should have
known that there were two separate living units when she obtained the warrant and whether the
agents should have realized the error in the warrant when they arrived at the scene. Although the
parties presented evidence relevant to these issues at the suppression hearing, the trial court made
no findings on the issues. In a recent decision, the Court of Criminal Appeals held that when a
trial court enters findings of fact, but fails to make an explicit finding on a dispositive issue, we
should not assume that the court made an implicit finding on the issue to support its ruling. 
Instead, we should remand for the trial court to make an explicit finding on the issue. See State
v. Elias, 339 S.W.3d 667, 676 (Tex.Crim.App. 2011). But see State v. Weaver, No. PD-1635-10, 
2011 WL 4715178, at *5 (Tex.Crim.App. Sept. 28, 2011)(upholding a suppression ruling, post-Elias, on the basis of an implicit factual finding). As explained below, however, we agree with
the State’s argument that Appellant’s father had apparent authority to consent to the search of the
garage. We therefore find it unnecessary to remand for additional fact-finding. See Elias, 339
S.W.3d at 679.
Apparent Authority
            In its second issue, the State asserts that Appellant’s father had apparent authority to
consent to a search of the garage. A person may validly consent to a search if the person has
common access to, and control over, the property. Limon v. State, 340 S.W.3d 753, 756
(Tex.Crim.App. 2011). Here, the trial court accepted the father’s testimony that Appellant had
exclusive control over the garage. The State concedes that based on the father’s testimony, there
is sufficient evidence to support a conclusion that he did not have actual authority to consent.
            Even if actual authority does not exist, consent may be validly obtained from a person
who had apparent authority over the property. See Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct.
2793, 111 L.Ed.2d 148 (1990); Limon, 340 S.W.3d at 756. To determine whether a person had
apparent authority, we must ask: “would the facts available to the officer at the moment warrant
a man of reasonable caution in the belief that the consenting party had authority over the
premises?” Limon, 340 S.W.3d at 756, quoting Rodriguez, 497 U.S. at 188, 110 S.Ct. at 2801. 
This is an objective standard. Id. “[R]easonableness hinges on widely shared social expectations
and commonly held understanding about the authority that co-inhabitants may exercise in ways
that affect each other’s interest.” Id. at 756-57 [Internal quotation marks and footnote omitted].
            The Supreme Court has stated that apparent authority will not validate a search if the
surrounding circumstances were such that a reasonable person would doubt whether the person
had authority to consent. Rodriguez, 497 U.S. at 188, 110 S.Ct. at 2801. In those circumstances,
officers have an obligation to inquire further before searching. See id., 110 S.Ct. at 2801. Texas
appellate courts, including this one, have construed these admonitions to mean that officers
cannot “rely upon consent given in ambiguous circumstances.” See, e.g., Valdez v. State, 336
S.W.3d 330, 335 (Tex.App.--San Antonio 2010, no pet.); Giles v. State, No. 08–01–00080–CR,
2003 WL 68178, at *4 (Tex.App.--El Paso Jan. 9, 2003, no pet.)(not designated for publication). 
But see Limon, 340 S.W.3d at 758 (declining to determine whether a court was correct in stating
that “an officer may not proceed in an ambiguous situation without first verifying that the person
purporting to consent to the entry has authority to do so”).
            The State has the burden of proving apparent authority by a preponderance of the
evidence. Limon, 340 S.W.3d at 757. A trial court’s determination regarding apparent authority
is reviewed de novo as a mixed question of law and fact. Id.
            The State relies on Hubert v. State, 312 S.W.3d 554 (Tex.Crim.App. 2010). Although
Hubert is an actual authority case, rather than an apparent authority case, we agree that it is
relevant to the analysis. In Hubert, officers searched an adult defendant’s bedroom in a house
that he shared with his grandfather. Id. at 556. The grandfather opened the door to the
defendant’s bedroom for the officers to search it. Id. at 562. At the time of the search, the
officers knew that the grandfather owned the house and that the grandfather “did not ‘live’ or
sleep in the room that the [defendant] inhabited.” Id. The Court of Criminal Appeals held that
the fact that the grandfather did not sleep in the bedroom was insufficient, standing alone, to
negate his authority to consent to a search of the bedroom. Hubert, 312 S.W.3d at 562-63. The
court then noted that although a determination of joint access is always a fact-specific inquiry,
“where the defendant lives with a parent or other close relative, and the relative consents to a
search of defendant’s bedroom, most courts presume that the relative has sufficient common
authority over the bedroom to authorize the consent to search.” Id. at 563 [Internal quotation
marks omitted]. The defendant may overcome this presumption by presenting evidence that he
had exclusive possession of the searched premises. Id. While recognizing that some courts have
refused to apply this presumption, the Court of Criminal Appeals refused to follow the reasoning
of those courts on the facts before it. Id. at 563-64.
            The State asserts that if courts may presume that a parent has authority to consent to a
search of an adult child’s bedroom, law enforcement officers could reasonably apply the same
presumption. We are not convinced that it would always be reasonable for officers to apply this
presumption. But we do believe that it was reasonable for the agents to believe that Appellant’s
father had authority on the facts presented here.
            As in Hubert, Appellant and his father lived at the same address, and Appellant had
separate living quarters at that address. Appellant’s separate living quarters were in a detached
garage, rather than a bedroom within the house. This suggests a weaker argument for authority
than in Hubert. But given the fact that Appellant was only seventeen years’ old, the fact that he
lived in the detached garage does not negate a reasonable belief that Appellant’s father could
validly consent to a search of the garage. As one court has noted, “the parents of a minor child
are in a considerably different position from the parents of an adult child.” In re D.C., 115
Cal.Rptr.3d 837, 844 (Cal.Ct.App. 2010). In particular, “a father has the responsibility and
authority for the discipline, training and control of his children. In the exercise of his parental
authority a father has full access to the room set aside for his son for purposes of fulfilling his
right and duty to control his son’s social behavior and to obtain obedience.” In re D.C., 115
Cal.Rptr.3d at 843. In Texas, a person under the age of eighteen is considered to be a minor. See
Tex.Fam.Code Ann. § 101.003(a)(West 2008). A parent has the duty to care for, control,
protect, and discipline a minor child. Id. at § 151.001(a)(2). Permitting the agents to search his
son’s living quarters to determine if his son was accessing child pornography was “a reasonable
and necessary extension of [Appellant’s] father’s authority and control over his . . . moral
training [and] health.” In re D.C., 115 Cal.Rptr.3d at 843; see also Limon, 340 S.W.3d at 756-57
(noting that reasonableness hinges on widely shared social expectations and commonly held
understandings). A parent also has a specific duty to provide shelter for a minor child. 
Tex.Fam.Code Ann. § 151.001(a)(3). Considering this duty, it was reasonable for the agents to
conclude that Appellant’s father had the authority to consent to a search of his son’s living
quarters.
            Moreover, comparing the facts here to those in Limon, we conclude that the situation was
not so ambiguous as to require further inquiry by the agents. In Limon, an officer learned that
“the Limon kids” may have been involved in a shooting. 340 S.W.3d at 755. Knowing of only
one Limon family in town, the officer went to that residence and knocked on the door at
approximately 2 a.m. Id. at 755-56. The door was opened by a boy whom the officer did not
know. Id. at 756. He learned later that the boy was only thirteen- or fourteen-years’ old. The
officer did not ask the boy if he owned or possessed the residence, but assumed that he resided
there because he opened the door. Id. The officer told the boy that he was investigating a
shooting and asked for permission to enter. The boy let him in the house. Limon, 340 S.W.3d at
756. The Court of Criminal Appeals held that there was “no ambiguity with respect to [the
boy’s] apparent authority.” Id. at 758. Based on the facts available to the officer at the time, “a
mature teenager, possibly an adult, opened the front door to him at 2:00 a.m. and, after hearing
that he was investigating a shooting, gave him consent to enter through the front door. We find
that a person of reasonable caution could reasonably believe that [the boy] had the authority to
consent to mere entry under those circumstances.” Id. at 758-59.
            Based on the facts available to these agents at the time, Appellant’s father opened the
door to the main house at 6 a.m. and, knowing that the agents were searching for child
pornography, told them that they could search the area where his son lived, in a detached garage. 
There is no indication that he hesitated in giving consent, and Appellant’s father testified that he
did not tell the agents that they needed his son’s consent to search the garage. There is nothing to
indicate that the agents should have been aware, before they entered the garage, that it was a
complete and separate living unit. The photographs that were admitted into evidence show what
looks like a functioning garage with a door for vehicles to enter. Under these circumstances,
Appellant’s father had apparent authority to consent to the search of the garage. See United
States v. Bowden, 380 F.3d 266, 269-71 (6th Cir. 2004)(holding that elderly father had apparent
authority to consent to search of son’s garage and officers had no duty to determine the father’s
“nexus to each individualized segment of the property prior to searching”), rev’d on other
grounds, 544 U.S. 902, 125 S.Ct. 1615, 161 L.Ed.2d 274 (2005).
Conclusion
            The State’s second issue is sustained. The suppression order is reversed, and the cause is
remanded to the trial court for further proceedings.


November 16, 2011
CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)